J. R. JOHNSON, TAX COLLECTOR, v. LON A. SMITH, COMPTROLLER.

No. 3376.   Decided December 20, 1922.

(246 S. W., 1013.)

**1.—Constitutional Law—Impairing Contract—Parties.**

The tax collector was required to pay to parties employed by the Comptroller to collect inheritance taxes, under article 7491, Revised Statutes, as amended by the 35th Legislature, the lawful commission provided by their contract, if such contract was in force when they made the collection, and having done so to receive credit therefor in his settlement with the Comptroller. He could, therefore, though not a party to the contract, assert its continued validity after the passage of an Act repealing the law under which it was made, on the ground that the validity of the contract could not constitutionally be impaired thereby.   (pp. 226, 227).

**2.—Contract—Term—Authority to Make.**

The authority conferred on the Comptroller to contract with parties for the collection of inheritance taxes, involving outlay of time, energy, and expense in so doing, conferred on him power to make such contract for a definite period of time, such as for two years.   (p. 227).

**3.—Contract—Sub-letting.**

If a provision in a contract by the Comptroller for collecting taxes giving the contractors right to sub-let their undertaking was unauthorized and invalid. it did not affect the validity of the entire contract nor deprive them of the right to their legal commissions on collections made through their personal services.   (p. 227).

**4.—Contractor—Public Office—Impairing Validity of Contract.**

Parties employed by the Comptroller by authority of law for a fixed period to collect certain taxes were not thereby made officers of the State, whose position and right to compensation could be ended by repeal of the law.   The contract was one protected by the State and the Federal Constitution, and its validity could not be so impaired.   (p. 227).

**5.—Same—Repeal.**

Article 7491, Revised Statutes, as amended by the 35th Legislature, was repealed by substituting for it in its entirety the later Act of the 36th Legislature (Act of July 28, 1919, Laws, 36th Leg., p. 164.)   But this could not impair the obligation of contracts made under the former law, nor does such act manifest any intention so to do.   (pp. 227, 228).

6.—Contracts by State.

The same law applies to the State, when it becomes a party to a contract with a citizen, as under like conditions governs the contracts of individuals; and no public policy prevents it from entering into contracts beyond the power of legislation to impair.  (p. 228).

Original application by Johnson, Tax Collector of Grayson County, for writ of mandamus against Lon A. Smith, State Comptroller, (substituted as party for his predecessor in office, M. L. Wiginton, the original respondent) to require the allowance of a credit claimed in relator's accounts, but disallowed by respondent.

*Bailey, Nickels & Bailey,* for relator.

The contract in question, entered into by the State of Texas, acting through its Comptroller, on the one hand, and Smith, Woodall and McFarland, on the other hand, was authorized by Chapter 166, Acts of the Thirty-fifth Legislature, Regular Session, and was a valid contract, binding upon all parties thereto.  Chapter 166, Acts 35th Legislature, 1917, Regular. Session; Maud, Tax Collector, v. Terrell, 109 Texas, 97, 200 S. W., 375.

Chapter 164, Acts of 1919, Regular Session, does not, and does not purport to, apply to, affect, or abrogate, contracts made as authorized by Chapter 166, Acts of 1917, Regular Session, and should not be held to apply to, affect or abrogate such outstanding contracts because such construction would bring it into conflict with various constitutional provisions hereinafter cited.  Chapter 166, Acts 1917, Regular Session; Maud v. Terrell, 109 Texas, 97; 200 S. W., 375; Chapter 164, Acts 1919, Regular Session; Sherwood v. Fleming, 25 Texas Supp. 428-429; Mellinger v. City of Houston, 68 Texas, 37.

If Chapter 164, Acts of the Thirty-sixth Legislature, 1919, Regular Session, was intended to or did have the effect of repealing Chapter 166, Acts of 1917, so as to avoid said contract and authorize the Tax Collector or the Comptroller to refuse to recognize the rights of Smith, Woodall and McFarland under such contract, then the same, so applied, construed and enforced, was and is unconstitutional and void, in that it thus contravenes those provisions of Section 16, Article I of the Constitution of Texas, which provides that no "retroactive law, or any other law impairing the obligation of contracts, shall be made."  De Cordova v. Galveston, 4 Texas, 478; Mellinger v. City of Houston, 68 Texas, 37; City of Austin v. Cahill, 99 Texas, 172-195; Luter v. Hunter, 30 Texas, 689; Railway Co. v. Locke, 74 Texas, 370; Barker v. Torrey, 69 Texas, 11; Snider v. Methvin, 60 Texas, 487, 500; Sherwood v. Fleming, 25 Texas Supp., 428; White v. Martin, 66 Texas, 345; Morris v. State, 62 Texas, 743; G. C. & S. F. Railway Co., v. Rowland, 70 Texas, 298; Maynard v. Freeman, 60 S. W., 335; Hall v. Wisconsin, 103 U. S., 5; Dartmouth College v. Woodward, 4 Wheaton, 518, 694; Davis v. Gray, 16

Wallace, 203; United States v. Hartwell, 6 Wallace, 385; Green v. Biddle, 8 Wheaton, 1; Water Supply Co., v. Brooklyn, 166 U. S., 685; Fletcher v. Peck, 6 Cranch, 87; Farrington v. Tenn., 95 U. S., 679; Morley v. Railway Co., 146 U. S., 162; Ogden v. Saunders, 12 Wheaton, 213; Nat. Surety Co. v. Decorating Co., 226 U. S., 276; Edwards v. Kearzy; 96 U. S., 595; Louisiana v. New Orleans, 102 U. S., 203; Mt. Pleasant v. Beckwith, 100 U. S., 533-534; Seibert v. Lewis, 122 U. S., 284.

If Chapter 164, Acts of the Thirty-sixth Legislature, 1919, Regular Session, was intended to or did have the effect of repealing Chapter 166, Acts of 1917, so as to avoid said contract and authorize the Tax Collector or the Comptroller to refuse to recognize the rights of Smith, Woodall and McFarland, then the same, so applied, construed and enforced, was and is unconstitutional and void, in that it thus contravenes that provision of Article I, Section 10, paragraph 1, of the Constitution of the United States, which provides that "no State shall . . . pass any . . . law impairing the · obligation of contracts." Same authorities.

*C. M. Cureton,* Attorney-General, and *S. F. Smith,* Assistant, for respondent.

We call attention to the well-settled rule of law that only those who have contract rights which are impaired by a subsequent law have the right to take advantage of the constitutional inhibition against the Legislature passing a law that will inpair the obligations of a contract. Coffin v. Portland, 27 Fed. 412; New Orleans Canal & Nav. Co. v. New Orleans, 12 La. Ann., 364; Moore v. New Orleans, 32 La. Ann., 727; 3 Elliott on Contracts, Sec. 2718.

And a person whose rights are merely incidentally affected by a law impairing the obligations of a contract cannot be heard to complain. Hagar v. Reclamation District No. 108, 111 U. S., 701; Williams v. Eggleston, 170 U. S., 304; Wright v. Columbus H. V. & A. R. Co., 176 U. S., 481; Smith v. Inge, 80 Ala., 283; Bulkley v. Williams, 68 Conn., 131; 48 L. R. A., 465; Affirmed 170 U. S., 304; Browne v. Turner, 176 Mass., 9.

The Act of the 35th Legislature amending Article 7491 says that the Comptroller shall "appoint and contract with some suitable person or persons," etc. No authority is given to make a contract for any fixed or certain time. An office or position had been created by the Legislature and the Act creating the · office or position had made it the duty of the Comptroller to act as the agent of the State and to appoint some suitable person or persons to the office or position so created. "A State may enter into a contract through its agent but the limits of his power must be strictly observed." 1 Elliott on Contracts, 452, and authorities there cited.

The fifth paragraph of the contract of January 21, 1919, provides that the appointees of the Comptroller may "sub-contract with competent persons throughout the State" to do any and everything that the appointees themselves could do. This paragraph invalidates the contract, for the Comptroller had no authority to make such a contract.

It is our contention that Mr. Smith and his associates are entitled to their commission on all Inheritance Taxes collected where they had rendered the services contemplated by the statute from the date of the contract and up to the 18th day of June, 1919 (the date the Act of the 36th Legislature became effective), and on all taxes collected after the 18th day of June, 1919, when the services contemplated by the statute had been rendered prior to the 18th day of June, but that they are not entitled to any commission if the services were rendered after the 18th day of June, 1919. After the 18th day of June, 1919, it became the duty of the county attorneys to do those things previously required of the appointees of the Comptroller.

It is well settled that a public officer does not have such a vested right in a public office as will prevent the Legislature from abolishing an office created by the Legislature. Carver v. Wheeler County, 200 S. W., 537; Jones v. Shaw, 15 Texas, 577; Beaman v. United States, 19 Ct. Cl., 5; Miller v. Kister, 68 Cal., 142, State v. Covington, 29 Ohio State, 102; Lloyd v. Smith, 176 Pa., 213; State v. McDaniel, 19 S. C., 114; Topping v. Houston, 94 Neb., 495; Childs v. State, 4 Okla. Cr. Rep., 474.

We think that Mr. Smith and his associates were public officers, but if we are mistaken in this, they clearly held a public position, created by the Legislature, and the rule of law allowing the Legislature to abolish a public office and thereby cause the salary or commission accruing to the person holding the office, to cease, is applicable to the position of employment held by Mr. Smith and his associates, if it be held to be an employment and not an office. Maud v. Terrell, 109 Texas, 97, 200 S. W., 378; Hall v. State, 39 Wis., 74.

Even if the 35th Legislature intended for the Comptroller to make such a contract as he attempted to make and intended it to have the effect that relator says it has, the contract is void, because contrary to sound public policy. Each Legislature must be free and untrammelled in the exercise of its power under the limitations placed on it by the Constitution.

The State is not as an individual or corporation in the employment of officers and employees; individuals or corporations can make a contract of employment that is enforceable, and that cannot be abrogated by the abolishment of the office or position. Not so, the State. The reason for the distinction is one of sound public policy. Cooley's Const. Lim., 7th Ed., 833.

112 Tex.—15

Mr. Justice PIERSON delivered the opinion of the court.

Article 7491, R. S. 1911, as amended by the 35th Legislature, conferred authority upon the Comptroller of Public Accounts and made it his duty ''to appoint and contract with some suitable person or persons whose duty it shall be to look specially after, sue for and collect the taxes'' (inheritances taxes) provided for by Chapter 166, fixing the maximum compensation to be received by such person or persons at 10% of the amount of taxes collected and providing that the compensation due should be paid to such person by the Collector of Taxes out of taxes collected.

Under authority of this enactment, on the 21st day of January 1919 the Comptroller entered into a written contract with Jno. T. Smith, Wm. Woodall and M. M. McFarland to do and perform the services provided for in said act. Said contract provided for the maximum compensation and was to continue in force and effect until January 1, 1921, a period of approximately two years.

The 36th Legislature amended said Article 7491 as amended by the 35th Legislature, substituting for and leaving out all the provisions under which the aforesaid contract was made. This article so amended became effective June 18, 1919.

On October 17, 1919, through the efforts of Smith and associates a certain collection of such inheritance taxes was made in Grayson County. Out of the taxes collected relator paid them the 10% commission provided in their contract, but, on the advice of the Attorney General, the Comptroller refused to credit relator's account with the amount so paid. Relator's right to a mandamus to require respondent to enter such credit depends upon the validity of the contract between Smith and associates and the Comptroller on October 17, 1919, the date of the collection of the taxes. Respondent's chief contention is that the 36th Legislature repealed Article 7491 as amended by the 35th Legislature and that the contract by and between Smith and associates and the Comptroller fell with it; that said Article as amended by the 35th Legislature and the contract under it created a public office and that the Legislature had the authority and that it did abrogate and discontinue same.

First, however, we notice three other issues raised by respondent. He presents that relator, the Tax Collector, was not a party to the contract and has no such interest as to entitle him to maintain this suit; that he cannot plead the nullity of a law impairing the obligations of this contract; that his rights are only incidentally affected by the law impairing its obligations.

If the contract with Smith and associates was still operative and valid, then it was the duty of relator to pay over to them the commission due them under it, as provided in the law under which the contract was executed. It would follow, having performed this

duty, that he would be entitled to have such amount credited to him by the Comptroller. He would have the same right to bring and prosecute this suit to require the Comptroller to credit him on his account as he would have to defend against a suit by the State against him and his bondsmen for said amount and to show that he had paid same to Smith and associates under authority of said contract and the law authorizing it and to maintain that said payment was legal in all respects.

Respondent insists that the article of the statute under which the contract was made did not authorize a contract for any fixed or definite period of time, and therefore the contract was without authority and unenforceable.

It would be unreasonable to hold that the Legislature authorized and instructed the Comptroller to make a contract with some suitable person or persons who would render diligent aid in the collection of inheritance taxes and perform services that would entail much outlay of·time, energy and expense and yet limit same to a contract at will. No suitable person or persons would be willing to enter into such a contract. It must be implied that the authority given included the making of a contract for a given or definite period of time.

Neither do we think respondent's proposition that the provision in said contract that Smith and associates may "sub-contract with competent persons throughout the State" invalidates the contract. That paragraph of the contract is not material here. Even if that paragraph should be held to have exceeded the authority given by the statute yet the contract otherwise would not be rendered nugatory and void thereby.

The contract entered into between the Comptroller and Smith and associates, under the authority of Article 7491 as amended by the 35th Legislature did not create a public office, but was a contract which is protected by Section 16. Article 1, of the Constitution of Texas which provides that no "law impairing the obligation of contracts shall be made" and also by Section 10, Article 1, of the Constitution of the United States. Morris .v. State, 62 Texas, 743; Hall v. Wisconsin, 103 U. S., 5; United States v. Hartwell, 6 Wallace, 385; New Orleans Gas. Co. v. Louisiana Light Co., 115 U. S., 650; Long Island Water Supply Co. v. Brooklyn, 166 U. S., 685; The Trustees of Dartmouth College v. Woodward, 4 Wheaton, 463.

We think there can be no doubt that the 36th Legislature did repeal Article 7491 as amended by the 35th Legislature by substituting for it in its entirety. It was competent for the Legislature to repeal or so amend Article 7491 as to change the plan for collecting inheritance taxes and to withdraw the authority for other contracts under its provisions. This it did, but in doing so it did not and could not affect or terminate prior contracts legally entered

into under said authority. There is nothing in the Article as amended by the 36th Legislature which manifests an intent to affect or avoid prior contracts.

Article 7491 as amended by the 35th Legislature directed and made it the duty of the Comptroller to "contract with some suitable person" and provided the duties to be performed by the person "so contracted with" limiting the compensation to be fixed by said contract to a commission of not to exceed 10% and provided how it should be paid.

It is true that the statute made it the duty of the Comptroller to "appoint and contract" and refers to the appointee of the Comptroller, yet the effect of the statute was to authorize and direct the Comptroller to "contract with some suitable person" to be selected by him.

The Supreme Court of the United States in the case of U. S. v. Hartwell, supra, in distinguishing between a government office and a government contract said:

"An office is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument, and duties. . . . A government office is different from a government contract. The latter from its nature is necessarily limited in its duration and specific in its objects. The terms agreed upon define the rights and obligations of both parties, and neither may depart from them without the assent of the other."

The contract of Smith and associates with the State was specific in its objects and limited in duration, the duration being a matter of agreement in the making of the contract, the duties were defined and neither could withdraw therefrom without the consent of the other.

Could it be maintained that Smith and associates could resign from their contract as from an office and withdraw from their obligtions thereunder and have their $10,000 bond cancelled at their will? We think not. Their Bond and their contract were for the performance of their obligations for the term of the contract.

The able attorneys for respondent insist that to hold that the Legislature could not repeal the law so as to terminate this and similar contracts would be against public policy and disastrous to the public good. The State, like individuals, especially when entering into private contracts, must first well consider what contracts it will enter into or authorize with the view of having them performed according to their terms.

When the State becomes a party to a contract with a citizen, the same law applies to it as under like conditions governs the contracts of individuals. Anderson v. Robison, 238 S. W., 883 and cases there cited.

The writ of mandamus is granted.

Chief Justice Cureton took no part in the decision of this case.