THE ATTORNEY GENERAL
OF TEXAS
PRICE DANIEL
ATTORNEY GENERAL


April 29, 1952

Hon. Robert S. Calvert          Opinion No. V-1442.
Comptroller of Public Accounts
Austin, Texas                   Re:  Status of adminis-
                                     trative fund es-
                                     tablished by the
                                     Social Security
                                     Act passed by the
Dear Sir:                            52nd Legislature.

        You have requested the opinion of this office
on the following questions:

        "1.  Does the second paragraph of
    Section 12 of House Bill No. 603, Regu-
    lar Session of the Fifty-second Legis-
    lature, create a special fund _in_ the
    state treasury?

        "2.  The last sentence in Section
    12 reads:  'These funds will not be
    State funds and will not be subject to
    legislative appropriation.'  Is this a
    valid provision?

        "3.  If you should answer question
    number 2 in the negative, then does Sec-
    tion 13 of House Bill No. 603, Acts of
    the Regular Session of the Fifty-second
    Legislature, appropriate the monies col-
    lected under the provisions of the Act to
    the Social Security Administrative Fund?"

        House Bill 603, Acts 52nd Leg., R.S. 1951, ch.
500, p. 1480, title "Social Security - County and Muni-
cipal Employees," (Article 695g, V.C.S.) was passed for
the purpose of allowing county and municipal employees
to participate in the Federal Social Security program.
Under the federal act only the State, and not individual
counties and municipalities, may enter into social secur-
ity agreements with the Federal Agency.  In order to com-
ply with the requirements of the Federal Social Security
Act the State Department of Public Welfare was designated

as the State agency to administer this act on behalf
of the participants.  This office held House Bill 603
constitutional against a contention that the payments
required by the participating counties or municipali-
ties were gifts or grants of public money in violation
of the Constitution.  Att'y Gen. Op. V-1198 (1951).
The specific questions now before us were not involved
in that opinion and hence were not considered.

The provisions of House Bill 603 which give
rise to your questions are the following:

"Sec. 10.  The respective governing
bodies of the various counties or munici-
palities of this State which enter into
agreements under this program are hereby
authorized to pay to the State Agency, out
of any available funds not otherwise dedi-
cated, such amounts, separate and apart
from employees' contributions and matching
contributions, as may be agreed between the
respective governing body and the State
Agency to be necessary to finance the coun-
ty's or municipality's proportionate share
in the administrative cost of this program
at the State level.  The State Agency shall
require specific undertakings to defray a
proportionate share of the administrative
expenses at the State level in agreements
negotiated with counties and municipalities
on any basis mutually agreeable between the
State Agency and the participating county or
municipality, whether as an annual fee for
each participating county or municipality,
an annual fee per employee covered, a per-
centage based upon the contributions to the
Federal authorities, or any other equitable
measure.  Annually at the close of each fis-
cal year, the State Agency shall pay from
the Social Security Administration Fund to
the State Treasurer for deposit to the Gen-
eral Revenue Fund of the State of Texas an
amount not less than ten per cent (10%) of
these contributions during the preceding
year to defray administrative expenses until
such time as the amount appropriated to the
State Agency from funds of the State for ad-
ministrative purposes has been reimbursed in
full, at which time such payments shall cease.

"Sec. 12. . . . The State Agency shall deposit all moneys collected under the provisions of this Act from participating counties and municipalities to defray the cost of administering this program at the State level in a special fund to be known as the Social Security Administration Fund. <u>The State Treasurer shall be treasurer and custodian of the fund, which shall be held separate and apart from all public moneys or funds of this State.</u> The State Treasurer shall administer this fund in accordance with the directions of the State Agency. Moneys deposited in either of these special funds shall be disbursed upon warrants issued by the Comptroller of Public Accounts pursuant to sworn vouchers executed by the State Agency acting through the executive director of personnel of the agency to whom he expressly delegates this function. <u>These funds will not be State funds and will not be subject to legislative appropriation.</u>

"Sec. 13. The State Agency is authorized to expend moneys in the Social Security Administration Fund for any purpose necessary to carry on the administration of this program at the State level, including but not limited to salaries, traveling expenses, printing, stationery, supplies, equipment, bond premiums, postage, communications, and contingencies, and the State Agency is authorized to employ such personnel, purchase such equipment, incur such expenses as may be necessary to carry out the administration of this program at the State level, provided all salaries and expenditures from this fund shall be consistent with the letter and spirit of comparable items and general provisions in the general departmental appropriation bill then current. (Emphasis added.)

The main question for decision concerns the validity of the above provisions in House Bill 603 relating to the safe-keeping and handling of the administrative fund. In this regard, the Supreme Court has said:

" . . . It is academic to say the Legislature has the power to pass any law which its wisdom suggests that is not forbidden by some provisions of the Constitution.  . . ." Byrd v. City of Dallas, 118 Tex. 28, 6 S.W.2d 738, 740 (1928).

The constitutional provision drawn into controversy in answering your questions is Section 6 of Article VIII, which provides:

"No money shall be drawn from the Treasury but in pursuance of specific appropriations made by law; nor shall any appropriation of money be made for a longer term than two years, except by the first Legislature to assemble under this Constitution, which may make the necessary appropriations to carry on the government until the assemblage of the sixteenth Legislature."

The case of Friedman v. American Surety Co. of New York, 137 Tex. 149, 151 S.W.2d 570 (1941), held that the trust fund established by the required contributions of employees and employers under the Unemployment Compensation Act was not a state fund and hence was not in the Treasury subject to appropriation by the Legislature, although the trust fund was held by the Treasurer.  The Friedman case, however, dealt only with the main trust fund, and not the administrative fund which is the fund giving rise to the problems before us.

In order to answer your questions it is necessary to analyze the Social Security Act passed by the Fifty-second Legislature.  Under the provisions of this act, counties and municipalities enter into Social Security agreements with the State Agency on a voluntary basis.  The whole plan is based upon contracts between the State Agency and the participating counties and municipalities.  One of the contractual agreements is to the effect that the State Agency will administer the act on behalf of the participants, but at their expense.  The participants each agree to share a pro rata part of the expenses of administration and in return the State Agency acts as the liaison body between the participants and the Federal Agency.  The State Agency has been given the authority necessary to comply with Federal requirements, but by contract all the counties and municipalities

participating in the plan share the administrative expenses.

We think it is clear that the money contributed by the participants and held by the State Agency to defray administrative expenses never becomes "State funds" in the sense that they could be placed in general revenue and appropriated by the Legislature. These funds remain county and municipal property and the State Agency holds them as trustee until they are expended, since the participants have contracted to bear the administrative expense. If an excess were to be established in this trust fund, the Legislature could not appropriate it for any other use. Such an act by the Legislature would violate the portion of Section 16 of Article I of the Texas Constitution relating to impairing the obligation of contracts. Johnson v. Smith, 112 Tex. 222, 246 S.W. 1013 (1922).

In light of the above analysis, you are advised that the administrative funds are not State funds, and therefore are not subject to appropriation. The special trust fund is not placed in the State Treasury, but by statute the Treasurer is made custodian of the fund. Undoubtedly the Legislature may place such an added duty upon the Treasurer. Manion v. Lockhart, 131 Tex. 175, 114 S.W.2d 216 (1938).

## SUMMARY

The administrative trust fund established under the provisions of the Social Security Act (H.B. 603, Acts 52nd Leg., R.S. 1951, ch. 500, p. 1480) is a fund provided, pursuant to contract, by the participating counties and municipalities. The trust fund is not a state fund and is therefore not subject to appropriation by the Legislature. The fund is not placed in the State Treasury, but the Legislature has merely made the Treasurer custodian of it.

APPROVED:                                    Yours very truly,

C. K. Richards                               PRICE DANIEL
Trial & Appellate Division                   Attorney General

E. Jacobson
Reviewing Assistant

Charles D. Mathews                           By E. Wayne Thode
First Assistant                              E. Wayne Thode
EWT:wb                                       Assistant