Gabriel A. FAZEKAS, Appellant,

v.

The UNIVERSITY OF HOUSTON et al., Appellees.

No. 17072.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

March 30, 1978.

Rehearing Denied April 27, 1978.

Sears & Burns, Will Sears, Robert L. Burns, Michael T. Powell, Houston, for appellant.

John L. Hill, Atty. Gen. of Texas, David M. Kendall, First Asst. Atty. Gen., Robert Steve Bickerstaff, Jr., Lonny F. Zwiener, Asst. Attys. Gen., Austin, for appellees.

COLEMAN, Chief Justice.

This suit was instituted by Gabriel A. Fazekas for the purpose of recovering salary and retirement benefits denied him by reason of the adoption by the University of Houston of a regulation requiring retirement at age 65. The case was tried to the court and at the conclusion of the evidence, the court sustained special exceptions which he had carried with the case and on the plaintiff's refusal to amend, entered a judgment dismissing the case and, alternatively, rendered a take nothing judgment against the plaintiff.

The plaintiff asserted causes of action for breach of contract; denial of due process and equal protection under the Fourteenth

Amendment to the United States Constitution; impairment of the rights and obligations of plaintiff's contract under Article I, Section 10 of the United States Constitution; deprivation of civil rights pursuant to 42 U.S.C., Section 1983; and denial of rights and privileges guaranteed by the Bill of Rights of the Texas Constitution.

■ The defendant first excepted to the plaintiff's petition for the reason that the court lacked jurisdiction to hear the alleged cause of action because the action was one against the State and it was not alleged that plaintiff had received legislative permission to institute the suit.

The court erred in sustaining this special exception. Section 111.33 of the Texas Education Code grants legislative consent to sue the University of Houston. This section provides that the Board of Regents has the power to sue and be sued in the name of the University of Houston. Section 111.33 was derived from Section 3 of the Acts of 1961, 57th Legislature, Ch. 370, p. 811, which included the specific language "Legislative consent to such suits is herewith granted." The quoted language was not carried forward into the Code in express terms. Provisions for institutions of higher education were not included in the original Education Code, but they were added by the 62nd Legislature. Acts 1971, 62nd Leg., Ch. 1024, p. 3072. In addition to restating the statutes governing institutions of higher education, this legislation provides: "Paragraph Sec. 2. LEGISLATIVE INTENT. This is intended as a recodification only and no substantive changes are intended by this legislation."

The language "no substantive changes are intended by this legislation" carries forward the language "legislative consent to such suits is herely granted" into the Code.

■ The other special exceptions present the question whether as a matter of law the plaintiff's petition states an enforceable claim, and is analogous to the old general demurrer. The pleading attacked must be liberally construed, as a whole, in such a way as to do substantial justice. For the purpose of ruling upon the exceptions, the court must accept as true all material factual propositions alleged, whether they be evidentiary or in the form of factual conclusions, as well as all factual propositions which, by fair implication, reasonably can be inferred from the allegations. Allegations of fact will not be considered true where in conflict with other allegations which negative them, or with facts which the parties stipulate may be considered in ruling on the exceptions, or with facts which are settled by conclusive presumptions arising from the facts admitted, or with facts of which the court takes judicial notice. 1 McDonald, Texas Civil Practice (1970), Vol. 3, Section 10.14.2. Certain material allegations of the plaintiff's petition will be summarized.

Plaintiff entered into a contract of employment with the University of Houston by the terms of which he was to serve in the position of Professor of Mechanical Engineering. The employment contract incorporated all provisions of the 1959–1960 Faculty and Staff Handbook of University of Houston then in force. The agreement expressly incorporated those provisions relating to faculty tenure and termination procedures, pursuant to which plaintiff was to serve a minimum two year probationary period in the agreed position at the University and would then be eligible for tenure (i. e., continuous appointment). After tenured status was achieved, plaintiff was assured of continuous employment until retirement at age 70. Termination of the employment of a professor with tenure, except by resignation or retirement for age in accordance with the regulations in force on the contract date, could be only for good cause shown.

The petition further alleges that plaintiff was granted tenure effective September 1, 1967. The 1967 Faculty and Staff Manual of the University of Houston then in force contained essentially the same provision with regard to termination of a tenured professor as the 1959–1960 Handbook. The retirement policies then applicable and incorporated by the parties agreement provided:

"All University employees shall retire at age 70 unless they are invited by the Board to continue in service. The retirement of any employee may be requested by him or by the University between the ages of 60 and 70. Tenure policies herein stated are subject to this regulation."

On November 7, 1972, the Board of Regents of the University revised the contractual retirement policy applicable to plaintiff by lowering the retirement age of all University personnel to 65, effective with the beginning of the regular academic year for 1975–1976. Plaintiff was notified in writing on May 18, 1976, that the Board of Regents had approved his appointment as Professor of Mechanical Engineering for the 1976–77 academic year. The writing specified that this appointment is a "one year extension beyond normal retirement age and is non-renewable". As a result, plaintiff was required to retire at age 66 rather than continuing in employment to age 70.

■ The defendants excepted to the petition for the reason that every contract entered into by the State of Texas is subject to the implied condition that its fulfillment may be frustrated by the proper exercise of state police power. The defendants further excepted to plaintiff's petition for the reason that no breach of contract was shown since the action of the Board of Regents in lowering the age for retirement of all University employees to 65 years was authorized by the contract provision reading "the retirement of any employee may be requested by him or by the University between the ages of 60 and 70. Tenure policies herein stated are subject to this regulation." The exception states that the action of the Board of Regents in lowering the age for retirement constituted a request by the Board to all employees, including plaintiff, to retire at the age 65.

■ The exceptions were improperly sustained. Evidence was needed to show that the contract in question was frustrated "by the proper exercise of state police power". The proposition urged is merely a defense to the claimed breach of contract.

The provision of the contract empowering the University to request retirement between the ages of 60 and 70 does not necessarily authorize it to require retirement before the age of 70. This provision should be construed in light of the circumstances existing at the time of the execution of the contract. The trial court is not authorized to resolve disputed issues of fact and then to use the fact established as the basis for a ruling on an exception to the petition. Issues of fact were presented by the alleged deprivation of constitutional rights. The trial court erred in sustaining the special exceptions and in entering judgment dismissing the petition.

■ The ruling on the exceptions was made at the conclusion of the trial and a full record is before this court. There can be but one final judgment in this case. The judgment dismissing the case is not conditional. The alternative judgment is not effective as a judgment. *Touchy v. Houston Legal Foundation,* 432 S.W.2d 690 (Tex. 1968). The judgment entered by the court is erroneous and must be reversed. Rule 434, T.R.C.P., requires this court to render such judgment as the trial court should have rendered. The parties have briefed points attacking the judgment on the merits. We will proceed to consider the case on the points raised in appellant's brief. *Zeisler v. Zeisler,* 553 S.W.2d 927 (Tex.Civ.App.—Dallas 1977, writ dism'd).

The University of Houston is an institution of higher learning created and supported by the State of Texas Chapter 111, Texas Education Code; The Appropriations Act, Acts 1977, 65th Legis., Ch. 872, Art. IV, page 3064. The concept of "tenure" is not statutorily addressed and the University is free to adopt or reject a tenure policy. When the plaintiff was employed by the University as a faculty member in 1964, the pertinent faculty and staff handbook (1959–60 edition) contained a tenure provision which provided:

"Termination of the employment of a professor or an associate professor with tenure, except by resignation or retire-

ment for age in accordance with the regulations, should be only for a good cause shown. (Note: Regulations provide that all University employees shall retire at age 70 unless invited by the Board to continue in service, and that retirement of any employee may be requested by him or by the University between the ages of 60 and 70. Tenure policies herein outlined are subject to this regulation.) In each case of termination for cause other than resignation or retirement the issue will be determined by an equitable procedure affording protection to the rights of the individual and to the interest of the University."

Appellant was granted tenure effective September 1, 1967, at which time the 1967 Faculty and Staff Manual was in force and provided with respect to tenure:

"After the expiration of a probationary period, faculty members are awarded tenure by the President and their service will be terminated only for an adequate cause, except in the case of retirement for age, or for circumstances due to financial exigencies."

The 1967 Manual further provided:

"All University employees shall retire at age 70 unless they are invited by the Board to continue in service. The retirement of any employee may be requested by him or by the University between the ages of 60 and 70. Tenure policies herein stated are subject to this regulation."

The 1972 Faculty and Staff Manual included the following provisions:

"Tenured faculty members will be terminated only for adequate cause, except in the case of retirement for age, or for circumstances due to financial exigencies."

"Effective September 1, 1975, all faculty members shall retire at age 65 unless they are invited by the Board of Regents to continue in service. Invitations for continuation of a faculty member normally originate annually within the department or departments in which the faculty member holds an appointment. _ _ _ The retirement of University personnel

may be requested by the individual prior to age 65."

Throughout appellant's service with the University, he accepted and signed, at the beginning of each academic year, appointment forms which set out the amount of compensation and noted the appointment was:

"Subject to all rules and regulations of the University of Houston and all applicable statutes of the State of Texas."

The law establishing the University of Houston has been codified in Chapter 111 of the Texas Education Code. It provides that the organization and control of the university are vested in a board of nine regents. The board of regents is authorized to appoint and remove any faculty member or other officer or employee of the university when, in its judgment, the interest of the university requires it. All contracts of the university must be approved by a majority of the board. The board is specifically authorized to enact bylaws, rules, and regulations necessary for the successful management and government of the university.

■■■■ Since the Board of Regents of the University of Houston is authorized by statute to enact bylaws, rules and regulations necessary to the government of the University, its rules are of the same force as would be a like enactment of the legislature. The powers of all state officers are fixed by law, and all persons dealing with them are charged with notice of the limits of their authority and are bound at their peril to ascertain whether the contemplated contract is within the power conferred. *State v. Ragland Clinic-Hospital,* 138 Tex. 393, 159 S.W.2d 105 (1942); *Foley v. Benedict,* 122 Tex. 193, 55 S.W.2d 805, 86 A.L.R. 477 (1932).

■■■ There can be no question but that properly authorized officers of the State of Texas can enter into a contract for services to be performed for the state. Such a contract is protected by Section 16, Article I, of the Constitution of the State of Texas which provides that no "law impairing the obligation of contracts, shall be made" and

also by Section 10, Article I of the Constitution of the United States. *Johnson v. Smith,* 112 Tex. 222, 246 S.W. 1013 (1922); *Farmers' Life Insurance Company v. Wolters,* 10 S.W.2d 698 (Tex.Com.App.1928).

The "Bill of Rights" of the Texas Constitution is embodied in Article I thereof. Section 29 of that Article reads:

"To guard against transgressions of the high powers herein delegated, we declare that everything in the "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void."

Section 16 of Article I of the Texas Constitution provides that no law impairing the obligation of a contract shall be made.

■ The police power of this State is broad and comprehensive; but the Constitution forbids its exercise when the result would be the destruction of the rights, guarantees, privileges, and restraints excepted from the powers of government by the Bill of Rights. *Travelers Insurance Company v. Marshall,* 124 Tex. 45, 76 S.W.2d 1007 (1934).

■ The statutory provisions pertaining to plaintiff's employment with the University of Houston are necessarily a part of his contract of employment and are read into his contract as fully as though they had been actually incorporated in it. *Devon v. City of San Antonio,* 443 S.W.2d 598 (Tex. Civ.App.—Waco 1969, writ ref'd). For reasons to be discussed hereinafter, the provision of the rules and regulations regarding tenure is not dispositive of this case. The real question is whether or not the regulation adopted by the Board requiring retirement at the age 70 becomes a part of the contract between the University of Houston and the plaintiff and thereby insulates the plaintiff from the effect of a subsequently adopted regulation requiring retirement at an earlier age.

■ The Act creating the University of Houston specifically granted the Board of Regents rule-making power. The authority to make rules implies a power to modify or change rules. The provision requiring retirement at age 70 does not constitute a contractual limitation on the power of the Board of Regents to determine that an earlier retirement age is in the best interest of the University. The Faculty Handbook specifically provides that after faculty members are awarded tenure by the president their service will be terminated only for adequate cause except in the case of retirement for age. The provision in the rules that a faculty member "shall be" retired at age 70 is a limitation on the contractual rights granted to the Professor rather than a limitation on the power of the Board of Regents. The legislative power granted the Board of Regents by the Act creating the University of Houston cannot be bartered away.

In *Dodge v. Board of Education,* 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57 (1937), the court said:

"In determining whether a law tenders a contract to a citizen, it is of first importance to examine the language of the statute. If it provides for the execution of a written contract on behalf of the state, the case for an obligation binding upon the state is clear. Equally clear is the case where a statute confirms a settlement of disputed rights and defines its terms. On the other hand, an act merely fixing salaries of officers creates no contract in their favor, and the compensation named may be altered at the will of the Legislature. This is true also of an act fixing the term or tenure of a public officer or an employee of a state agency. The presumption is that such a law is not intended to create private contractual or vested rights, but merely declares a policy to be pursued until the Legislature shall ordain otherwise. He who asserts the creation of a contract with the state in such a case has the burden of overcoming the presumption.—"

In *City of Dallas v. Trammel,* 129 Tex. 150, 101 S.W.2d 1009 (1937), the court said:

"In our opinion, the rule that the right of a pensioner to receive monthly payments from the pension fund after retire-

ment from service, or after his right to participate in the fund has accrued, is predicated upon the anticipated continuance of existing laws, and is subordinate to the right of the Legislature to abolish the pension system, or diminish the accrued benefits of pensioners thereunder, is undoubtedly the sound rule to be adopted."

In *Phelp v. State Board of Education,* 115 N.J.L. 310, 180 A. 220 (Sup.Ct.N.J.1935), affirmed sub-nominee *Askam v. Board of Education,* 116 N.J.L. 416, 184 A. 737 (Ct. Err. & App.N.J., 1936), the Supreme Court said:

"The Act of 1909, relating to tenure, provides, among other things, that no teacher shall be dismissed or subject to reduction of salary except for certain causes after charges and a trial. That established a legislative status for teachers, but we fail to see that it established a contractual one that the Legislature may not modify. . . . The status of tenure teachers, while in one sense perhaps contractual, is in essence dependent on a statute, like that of the incumbent of a statutory office, which the Legislature at will may abolish, or whose emoluments it may change. _ _ _"

An interesting statement appears in the case of *Martin v. Smith,* 239 Wis. 314, 1 N.W.2d 163 (1941), where the Supreme Court was considering the question of whether the presidency of the university is a public office and, in connection therewith, was considering a statute governing the University of Wisconsin. The Wisconsin statute provided that the board of regents shall enact laws for the government of the university. The statute also specifically provided that the board should have the power to remove the president or any professor, instructor or officer of the university when, in the judgment of the board, the interest of the university require it. After commenting upon this statutory power of the board, the court said:

"—The President serves only so long as in the judgment of the Board of Regents the interest of the University do not require his removal. There is vested in the Board by this clause of the statute a power of removal that is absolute. It need not be for cause and when the President accepts an election to the presidency, he accepts it subject to the statutory authority of the Board."

In *Houghton v. School Committee of Somerville,* 306 Mass. 542, 28 N.E.2d 1001 (at Middlesex, 1940), the court considered the effect of a rule adopted by the school committee denying employment to married women teachers on the rights of such a teacher who was employed in the public schools of Somerville on "tenure at the discretion of the school committee". The court said:

"The rule is not unconstitutional as impairing the obligation of the petitioner's contract of employment. Her employment 'at discretion' was always subject to policy-making powers of the committee, to such rules as they might adopt in pursuance of those powers, and to the power of dismissal expressly set forth in the governing statute itself. _ _ _"

A similar principle was recognized in *State v. Lone Star Gas Company,* 86 S.W.2d 484 (Tex.Civ.App.—Austin 1935, writ ref'd), where the court said:

"The right of the state to regulate the rates and practices of a public utility is referable to the police power of the state, and is a legislative function which cannot be alienated or contracted away by the state or any agency or political subdivision of the state. The constitution and laws of a state are a part and parcel of the terms of a corporate franchise, and the right of the state in the exercise of its police power to change franchise or contract rates in the protection of the inalienable rights and general welfare of its citizens is settled.—"

■ Professor Fazekas accepted his appointment to the faculty of the University of Houston and thereby entered into the contract with the University of Houston, which was subordinate to the rules and regulations adopted by the Board of Regents to govern the affairs of that institu-

tion. *Arlington Independent School District v. Weekley,* 313 S.W.2d 929 (Tex.Civ. App.—Fort Worth 1958, writ ref'd n. r. e.); *Romeike v. Houston Independent School District,* 368 S.W.2d 895 (Tex.Civ.App.—Waco 1963, no writ history).

The Act establishing the University of Houston provided that the authority to enter into contracts on behalf of the University rested in the Board of Regents. On June 5, 1965, Professor Fazekas signed an instrument reading:

"The Board of Regents has approved the following:

Subject to all rules and regulations of the University of Houston and all applicable statutes of the State of Texas Gabriel Fazekas is appointed (or reaffirmed) as Professor of Mechanical Engineering at a salary of $1575.00 per month for nine months.

Upon acceptance noted hereon, this arrangement becomes effective for the academic year 1965–66.

Immediately upon acceptance, please route a signed copy of this form through (1) the appropriate departmental chairman, (2) Dean or Director, to (3) the personnel services office. Signed: Philip G. Hoffman, President. Accepted: Gabriel A. S. Fazekas "

Each year thereafter Professor Fazekas executed an instrument identical in terms with the exception of the salary. The words "subject to", used in their ordinary sense, mean "subordinate to", "subservient to" or "limited by". There is nothing in the use of the words "subject to", in their ordinary use, which would even hint at the creation of affirmative rights. *Kokernot v. Caldwell,* 231 S.W.2d 528, 531 (Tex.Civ.App. —Dallas 1950, writ ref'd).

By executing these instruments, Professor Fazekas acknowledged that his contractual rights were subordinate to the rules and regulations issued by the Board of Regents.

█ The minutes of the regular meeting of the Board of Regents for November 7, 1972, recite:

"The Ad Hoc Committee for revisions to the faculty and staff handbook has recommended that the present retirement policy be revised. Upon the endorsement of the faculty senate, and after due consideration by the administration, the President recommended the approval of the proposed revision in the retirement policy. This change lowers retirement age of all University personnel to 65 instead of 70, with exceptions being made by invitation of the Board of Regents."

The minutes reflect that the revised retirement policy was unanimously adopted by the Board of Regents. The new policy became effective September 1, 1975. Professor Fazekas' appointment as a professor was reaffirmed for one year following the effective date of the new retirement policy. He was then required to retire, and his tenure was terminated by reason of retirement. This action did not violate either the state or the federal constitutional provision against the impairment of contractual rights.

█ The plaintiff also asserts that the defendant denied plaintiff equal protection of the law by arbitrarily creating an unreasonable classification of employees with the sole purpose and effect of unequal treatment on the basis of age. The Supreme Court of Texas spoke to this question in *Texas Woman's University v. Chayklintaste,* 530 S.W.2d 927 (Tex.1975), where the court stated:

"The age classification is constitutionally permissible if it is reasonable, not arbitrary, and rests 'upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971). When no suspect catagories are involved, any rational basis may justify the classification. *Johnson v. Robinson,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973)."

**308**

A retirement policy adopted by an independent school district requiring retirement at age 62 was upheld by the Court of Civil Appeals in *King v. Board of Trustees*, 555 S.W.2d 925 (Tex.Civ.App.—El Paso 1977, no writ history). The court relied upon the *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), where the court considered a statute providing for mandatory retirement of uniform police officers at age 50. There the United States Supreme Court held that the statute did not deny equal protection in violation of the Fourteenth Amendment of the United States Constitution. It further held that the strict scrutiny approach of the legislative classification was not required since the legislative classification interfered with neither fundamental rights nor did it create a "suspect classification". The court pointed out that it had consistently applied a standard less than that of strict scrutiny to state legislation restricting the availability of employment opportunities.

The purpose for changing the retirement age was to secure for the University a "younger, more vigorous faculty." The appellant with admirable frankness has stated the current status of the law in these words:

> "The current equal protection test followed by both federal and Texas courts has two standards of analysis, strict scrutiny and mere rationality. If state action invades a 'fundamental right' or discriminates against a 'suspected' class, it is subject to strict scrutiny. If state action is subject to strict scrutiny, it always, or nearly always is struck down. All remaining legislation is measured by the mere rationality test where the challenged activity is always upheld."

Retirement at age 65 is rationally related to the objective, "a younger, more vigorous faculty." The Supreme Court of this State adheres to the rationality test. We find the age classification to be reasonable and not arbitrary and, therefore, constitutionally permissible. *Johnson v. Lefkowitz*, 566 F.2d 866 (2nd Cir. 1977) cf., *Gault v. Garrison*, 569 F.2d 993 (7th Cir. 1977).

The judgment of the trial court is reversed and judgment is rendered that the plaintiff take nothing by his suit.