Honorable Bob Bullock Comptroller of Public Accounts L.B.J. State Office Building Austin, Texas 78774
Re: Authority of the comptroller to contract with paid informants for information about revenue or property the state may be legally entitled to recover (RQ-1302)
Dear Mr. Bullock:
You have requested an opinion on questions arising under article 4344g, V.T.C.S., which was adopted in 1987 by House Bill No. 921 of the 70th Legislature. Acts 1987, 70th Leg., ch. 874, at 2971. Article 4344g, V.T.C.S., authorizes you to contract with any person to receive information about claims for the recovery of revenue or property which the state may be entitled to pursue, except for property subject to escheat by the state. V.T.C.S. art. 4344g, § 1(a). See Prop. Code ch. 71-75. This enactment creates a financial incentive to persons who may be able to aid the state in recovering dormant accounts. Bill Analysis to H.B. No. 921, 70th Leg. (1987), on file in the Legislative Reference Library.
You first ask whether this statute violates article III, section51, of the Texas Constitution, which provides in part:
 Sec. 51. The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever. . . .
This provision prohibits giving away public funds; it does not deny the legislature the use of state funds for state purposes. State v. City of Dallas, 319 S.W.2d 767 (Tex.Civ.App.-Austin 1958), aff'd 331 S.W.2d 737 (Tex. 1960). To comply with the requirements of article III, section 51, any contract between a private individual and the state must serve a public purpose, adequate consideration must go to the state, and there must be contractual provisions designed to insure that the public purpose is carried out. See, e.g., Dodson v. Marshall, 118 S.W.2d 621
(Tex.Civ.App.-Waco 1938, writ dism'd); Attorney General Opinion Nos. H-1309, H-1260 (1978); H-912 (1976).
Article 4344g, V.T.C.S., provides as follows:
 (a) The comptroller of public accounts may contract with any person for the receipt of information about any possible claim that the state may be entitled to pursue for the recovery of revenue or other property, except that this Act shall in no way relate to or affect property which is recoverable by the state pursuant to Chapters 71-75, Property Code.
 (b) In any contract under Subsection (a) of this section, the total consideration to be paid by the state:
(1) shall be contingent on a recovery by the state;
 (2) may not exceed five percent of the amount of the revenue or the value of the other property that the state recovers as a result of the pursuit of the claim about which the contracting person provided information; and
 (3) may be limited by agreement to not exceed a specified, absolute dollar amount.
 (c) Consideration may not be paid by the state pursuant to a contract executed under Subsection (a) of this section if at the time the contract is executed or within three months after the date of execution, and by means other than disclosure under the contract, a state employee has knowledge of the claim disclosed under the contract or has knowledge of a cause of action different from that disclosed under the contract but entitling the state to recover the same revenue or other property. An affidavit by a state employee claiming that knowledge under those circumstances is prima facie evidence of the knowledge and circumstances.
It is a public purpose of the state to locate and recover revenue and other property to which it is entitled. See, e.g., Tex. Const. art. III, § 49a (comptroller's duty to estimate anticipated revenue for state from all sources); Gov't Code §403.011(2) (comptroller's duty to adopt regulations for collection of state revenues), § 403.055 (warrant may not be issued to person indebted to the state); § 403.091 (transfer to general revenue fund of balance in dormant fund); Property Code ch. 71-75 (provisions for escheat of funds to state).
Article 4344g, V.T.C.S., authorizes the comptroller to contract with a person to purchase information about claims to revenue or other property which the state may have. Properly authorized officers of the state may enter into a contract for services to be performed for the state. Fazekas v. University of Houston,565 S.W.2d 299 (Tex.Civ.App.-Houston [1st Dist.] 1978, writ ref'd n.r.e.), cert. dismissed, 440 U.S. 952 (1979). This statute makes payment of consideration contingent upon a recovery by the state and limits it to 5% of the amount of revenue or value of property that the state recovers. Thus, the state will receive adequate consideration for any payment made.
Moreover, the state may not pay consideration pursuant to an article 4344g contract where a state employee has knowledge of the claim disclosed under the contract or other knowledge entitling the state to recover. See V.T.C.S. art. 4344g(c). This provision prevents the state from compensating a private individual for information which duplicates information in the possession of the state at the time the contract is signed or within three months thereafter.
Section 4344g(c), V.T.C.S., also effectively prevents a state employee from entering into a contract with the comptroller under subsection (a) of that statute. If a state employee knows of a claim for revenue or property which the state is entitled to pursue, the state may not pay consideration under contract for information about that claim. Some state employees have an express duty to investigate and pursue claims on behalf of the state. See, e.g., General Appropriations Act, Acts 1987, 70th Leg., 2d C.S., ch. 78, art. I, rider 16, at 303 (collection of delinquent judgments by attorney general); Educ. Code § 52.39
(collection of money due on student loans). Subsection (c) of article 4344g, V.T.C.S., thus insures that the state will not pay extra compensation to a state employee for information he has received on behalf of the state in his capacity as a state employee. See Tex. Const. art. III, § 44 (legislature may not grant extra compensation to public servant after public service shall have been performed); V.T.C.S. art. 6252-9b, § 8 (standards of conduct for state officers and employees); Penal Code §39.03(a) (misuse of official information).
We finally note that article 4344g, V.T.C.S., does not establish a traditional reward program, under which the government offers a reward to the general public, payable upon performing a specific service, and an individual accepts the offer by performing. See, e.g., Broadnax v. Ledbetter, 99 S.W. 1111 (Tex. 1907) (sheriff offered reward for recapture of an escaped prisoner). Under such reward programs, the contract is formed only when an individual accepts the state's offer by performing the requested service, and the courts have struggled with questions of contract formation as well as the validity of rewards under article III, section 51. See Blain v. Pacific Express Co., 6 S.W. 679
(Tex. 1887) (individual who captured one of two criminals not entitled to half of reward offered for capture of both criminals); Weaver v. Scurry County, 28 S.W. 836
(Tex.Civ.App. 1894, no writ) (statute authorizing payment of bounties for destruction of wild animals analyzed for compliance with article III, section 51, of the Texas Constitution). Since article 4344g, V.T.C.S., contemplates that you will receive information pursuant to a contract, we need not address the questions raised by a reward program.
You next ask whether there is an appropriation from which to pay for information received under an article 4344g contract. ArticleVIII, section 6, of the Texas Constitution provides in part:
 No money shall be drawn from the Treasury but in pursuance of specific appropriations made by law. . . .
No particular form of words is required to make a "specific appropriation; " it is sufficient if the legislature authorizes an expenditure and specifies the purpose for which an appropriation is made. National Biscuit Co. v. State, 135 S.W.2d 687 (Tex. 1940). The appropriation for the comptroller's office, like appropriations to other state agencies, is itemized according to programs or functions of the office. It does not identify each salaried position or each contemplated expenditure; nor is such minute detail necessary to comply with article VIII, section 6, of the Texas Constitution. See S. G. Construction Co. v. Bullock,545 S.W.2d 953 (Tex. 1977) (appropriation from Available University Fund for permanent improvements and new construction may be used to pay judgment against University of Texas for additional work under a construction contract); Attorney General Opinion Nos. MW-251 (1980); H-1275 (1978); H-944(1977); H-289 (1974); WW-865 (1960) (construing terms of appropriations).
Your current appropriation provides in part:
COMPTROLLER OF PUBLIC ACCOUNTS STATE COMPTROLLER'S OFFICE
 For the Years Ending August 31, August 31, 1988 1989
1. Central Administration
a. Executive Administration
b. Budget and Internal Accounting
c. Revenue Estimating and Research
d. Legal Services
Total, Central Administration
2. Tax Administration:
a. Tax Policy and Taxpayer Services
b. Tax information
c. Field Operations: Headquarters
d. Field Operations: Enforcement
e. Field Operations: In-State Audit
f. Field Operations: Out-of-State Audit
. . . .
Total, Tax Administration
3. Funds Management:
a. Fund Accounting
b. Claims
Total, Funds Management
4. Aircraft Operations
5. Cost of Cigarette Tax Stamps, estimated
6. State Government Accounting Division
 7. Implementation of Bills Passed by the 70th Legislature, Regular Session
 GRAND TOTAL, COMPTROLLER OF PUBLIC ACCOUNTS, STATE COMPTROLLER'S OFFICE
(Emphasis added.)
Acts 1987, 70th Leg., 2d C.S., ch. 78, at 319 (amounts of appropriation items omitted). Specific amounts are appropriated for each item and the purpose of each expenditure is stated. We find no provision which bars the use of appropriated funds to make payments for article 4344g, V.T.C.S., contracts. See generally, In the matter of D___ H___, 556 S.W.2d 628
(Tex.Civ.App.-Waco 1977, writ ref'd n.r.e.) (rider barring use of appropriated funds to pay judgment unless such payment was specifically authorized in an item of appropriation). The fiscal note to House Bill No. 921 states that the bill "would have negligible fiscal implications to the State. . . ." Fiscal Note to H.B. No. 921, 70th Leg. (1987), on file at the Legislative Reference Library. Thus, the legislature would be unlikely to devote a separate line item to appropriations authorized by article 4344g, V.T.C.S. See generally Mutchler v. Texas Department of Public Safety, 681 S.W.2d 282 (Tex.App.-Austin 1984, no writ) (appropriated funds could not be used for overtime pay where program would cost over $4,000,000 per year and legislature had consistently refused to fund it). Our concern is whether there are line items in your appropriation that could be used to fund article 4344g contracts consistent with the legislature's intent in adopting items of appropriation.
Item 7 is subject to a rider which states that it shall be used to administer several specifically identified bills adopted by the 70th session of the legislature. Acts 1987, 70th Leg., 2d C.S., ch. 78, rider 16, at 323. House Bill No. 921 is not included in this list; therefore, we conclude that the legislature did not intend item 7 to be a source of payments for information received pursuant to article 4434g, V.T.C.S. However, the acquisition of information leading to the state's recovery of revenue or other property would fall within the purpose of other items. The items of the appropriations to your office reflect the functions and programs of your office. If you reasonably determine that the article 4344g, V.T.C.S., contracts should be handled under a particular program activity of your office, then the funds appropriated for that purpose may be spent to implement article 4344g, V.T.C.S. You are in the best position to determine where this new statutory authority fits into the overall structure of your agency, but we can suggest some items which could reasonably be used to pay for information leading to the recovery of revenue or property by the state. For example, funds appropriated as item d. under "Tax Administration" to enforce tax collection laws could be spent to acquire information about taxes owing the state. See generally Comptroller of Public Accounts, Budget Estimates for Fiscal Years 1988 and 1989 (July 1986), at 135 (description of Tax Administration: Field Operations: Enforcement). Items 2e. and 2f., for in-state and out-of-state audit, might also be used to acquire information about revenues and other property which the state may be entitled to claim.
We do not overlook the possibility that your office has already budgeted its appropriation so that no funds for article 4344g, V.T.C.S., contracts are available from any of the appropriation items which might be used for that purpose consistent with the legislature's intent in making the appropriation. Article 4344g, V.T.C.S., authorizes you to enter into contracts but does not require you to do so, and you have discretion to allocate appropriated funds to other authorized activities of your office rather than to this one.
You finally ask whether your office would be authorized to show the informant information otherwise deemed confidential under sections 111.006, 151.027 or 171.206 of the Tax Code to demonstrate that he is not entitled to compensation or is receiving the correct compensation for the information he furnished.[1]
Title II of the Tax Code contains the laws on state taxation, including chapters 111, 151, and 171. Chapter 111 of the Tax Code sets out the comptroller's powers and duties in collecting taxes imposed by title II. Tax Code § 111.001. He has authority to adopt rules not in conflict with the laws or constitution for the enforcement of the provisions of title II and the collection of taxes and other revenues thereunder. Tax Code § 111.002(a). To carry out the provisions of title II he may examine a taxpayer's books and records. Tax Code §§ 111.004; 111.0041; 111.0043. Section 111.006 of the Tax Code provides for the confidentiality of information obtained by examining a taxpayer's records:
 (a) The following matter is confidential and may not be used publicly, opened to public inspection, or disclosed except as permitted under Subsection (b) of this section:
 (1) a federal tax return or federal tax return information required to have been submitted to the comptroller with a state tax return or report; and
 (2) all information secured, derived, or obtained by the comptroller or the attorney general during the course of an examination of the taxpayer's books, records, papers, officers, or employees, including an examination of the business affairs, operations, source of income, profits, losses, or expenditures of the taxpayer.
 (b) All information made confidential in this title may not be subject to subpoena directed to the comptroller or the attorney general except in a judicial or administrative proceeding in which this state, another state, or the federal government is a party.
 (c) The comptroller or the attorney general may use information or records made confidential by provisions of this title to enforce any provisions of this title or may authorize their use in a judicial or an administrative proceeding in which this state, another state, or the federal government is a party. (Emphasis added.)
Tax Code § 111.006. See generally Attorney General Opinion H-661 (1975); H-223 (1974); Open Records Decision No. 300 (1981) (members of the public are not entitled to inspect under Open Records Act taxpayer records in comptroller's custody which are protected by confidentiality provisions).
Section 111.006 of the Tax Code is a strict confidentiality provision. Subsection (c) of that section allows the comptroller or attorney general to use such information to enforce the tax laws in title II or to authorize their use in specified judicial or administrative proceedings. It contains no language that would authorize the comptroller to reveal confidential information to an informant with whom he has contracted under article 4344g, V.T.C.S. Chapter 151 of the Tax Code, which deals with the administration of sales, excise, and use tax, and chapter 171, which pertains to franchise tax liability, are subject to the confidentiality provision of section 111.006 of the code and include specific confidentiality provisions as well. Tax Code §§151.027, 171.206. The comptroller may not disclose to an informant under a section 4344g contract information deemed confidential under sections 111.006, 151.027 or 171.206 of the Tax Code.
 SUMMARY
Article 4344g, V.T.C.S., which authorizes the comptroller to contract with informants to pay them for information about revenue or property the state may be entitled to recover, does not violate article III, section 51, of the Texas Constitution. State employees are not authorized to contract with the comptroller to provide such information in exchange for consideration under an article 4344g, V.T.C.S., contract. Funds appropriated to the comptroller's office may be used to fund article 4344g, V.T.C.S., contracts, even though the appropriation act does not expressly state that such contracts may be funded. Whether a particular line item may be used to fund such contracts depends upon the legislature's intent in adopting that line item. The comptroller's office would not be authorized to show an informant information that is confidential under sections111.006, 151.027, or 171.206 of the Tax Code.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lous McCreary Executive Assistant Attorney General
 Judge Zollie Steakly Special Assistant Attorney General
 Rick Gilpin Chairman Opinion Committee
 Prepared by Susan L. Garrison Assistant Attorney General
[1] Sections 154.308 and 155.185 of the Tax Code, which formerly provided for the confidentiality of information relevant to tax or cigarettes, cigars, and tobacco products, have been repealed. Acts 1985, 69th Leg., ch. 58, § 44.