Richard DETERMAN et al., Appellants,

v.

CITY OF IRVING, TEXAS et al., Appellees.

No. 20387.

Court of Civil Appeals of Texas, Dallas.

Sept. 25, 1980.

John A. Stewart, Blankenship, Potts, Aikman, Hagin & Stewart, Dallas, for appellants.

John F. Boyle, Jr., Hutchinson, Price, Boyle & Brooks, Dallas, D. Ladd Pattillo, Asst. Atty. Gen., Austin, for appellees, City of Irving.

Robert A. Wooldridge, Richard L. Adams, Worsham, Forsythe & Sampels, Dallas, for appellees, Las Colinas Corp. and Republic Nat. Bank of Dallas.

Before GUITTARD, C. J., and ROBERTSON and HUMPHREYS, JJ.

ROBERTSON, Justice.

This is an action under Tex.Rev.Civ.Stat. Ann. art. 717m–1 (Vernon Supp.1980) brought by the City of Irving in which the City seeks a declaratory judgment concerning the validity of an amendment to section 2(a), article V, of the city charter that limits the City's taxing power. The trial court declared the amendment void. We affirm.

On August 11, 1979, the voters of Irving, Texas adopted an amendment to section 2(a), article V of that city's charter. After the amendment, section 2(a) reads as follows:

> The city council shall have the power and it is hereby authorized and made its duty to levy annually for general purposes and for the purpose of paying interest and providing the sinking fund on the bonded indebtedness of the City of Irving now in existence or which may hereafter be created an ad valorem tax on all property within the territorial limits of said city and upon all franchises granted by the city to any individual or corporation of not exceeding a total of one dollar and fifty cents ($1.50) on the one hundred dollars ($100) assessed valuation of said property. *THE TOTAL SUM OF ALL AD VALOREM TAX INCREASES ON PROPERTY SHALL NOT EXCEED SIX PERCENT (6%) OF THE PREVIOUS YEAR'S TOTAL TAXES. THE AD VALOREM TAX INCREASE ON THE PROPERTY OF ANY PROPERTY OWNER SHALL NOT EXCEED EIGHT PERCENT (8%) OF HIS PREVIOUS YEAR'S TAX, PROVIDED THAT NO IMPROVEMENTS ARE MADE TO THE PROPERTY. AT LEAST NINE THOUSAND DOLLARS ($9,000) PLUS FIFTY PERCENT (50%) OF THE ASSESSED VALUE EXCEEDING NINE THOUSAND DOLLARS ($9,000) OF RESIDENT HOMESTEADS OF MARRIED AND UNMARRIED PERSONS SIXTY FIVE (65) YEARS OF AGE OR OLDER, INCLUDING THOSE LIVING ALONE, IS EXEMPT FROM ALL AD VALOREM TAXES, BUT SAID AMOUNT SHALL NOT EXCEED THE LIMITS*

*IMPOSED BY THE CONSTITUTION OF THE STATE OF TEXAS.* If for any cause the city council shall fail, neglect or refuse to pass a tax ordinance for any one year levying taxes for that year, then and in that event the tax levying ordinance last passed shall and will be considered in force and effect as the tax levying ordinance for the year for which the city council failed, neglected or refused to pass such ordinance, and the failure so to pass such ordinance for any year shall in nowise invalidate the tax collections.

The language added by the amendment is emphasized.

Prior to the amendment, the Irving City Council was authorized to issue general obligation bonds. Some of the bonds were issued after the amendment, and some have not been issued to date. Pursuant to article 717m–1, the City instituted this action for declaratory judgment as to its authority to issue these bonds, and all other bonds, and the validity of the amendment to section 2a, article V of the city charter.

Appellants filed a response to the City's petition that sought to uphold the validity of the amendment in all respects. Appellee Las Colinas Corporation, a property owning taxpayer in the City of Irving, filed a response urging the court to declare the amendment invalid for various reasons. Appellee Republic National Bank of Dallas, a holder of outstanding general obligation bonds of the City of Irving, also filed a response that alleged the amendment constituted an impairment of the obligation of contract because, by limiting the debtor–City's ability to tax for existing obligations, it operated directly to limit the security available to its bondholders. The Attorney General of the State of Texas appeared and answered. The trial court found the amendment void in its entirety.

## CONSTITUTIONALITY OF ARTICLE 717m–1

■ We are faced initially with appellant's constitutional challenge to article 717m–1. Though the point was not raised in the trial court, appellants argue that article 717m–1 is unconstitutional without referring to the federal or Texas constitution because the notice and trial procedures of the statute are overly broad. Appellees' response to this argument is that because it was not raised in the trial court, appellants cannot raise the argument on appeal. While we recognize that generally an issue may not be raised for the first time on appeal, *State of California Department of Mental Hygiene v. Bank of the Southwest National Association,* 163 Tex. 314, 322, 354 S.W.2d 576, 581 (1962), we note that exceptions to this rule exist. Appellate courts may consider fundamental errors. *Ramsey v. Dunlop,* 146 Tex. 196, 205 S.W.2d 979 (1947), whether a statute is constitutional when its unconstitutionality is obvious and apparent, *Lovejoy v. Lillie,* 569 S.W.2d 501, 503 (Tex.Civ.App.–Tyler 1978, writ ref'd n. r. e.), or whether a statute is constitutional when the statute is of sufficient public interest to justify such consideration, *Houston Chronicle Publishing Co. v. City of Houston,* 531 S.W.2d 177 (Tex.Civ.App.–Houston [14th Dist.] 1975), *writ ref'd n. r. e.,* 536 S.W.2d 559 (Tex.1976); even though the issue was not raised in the trial court. Article 717m–1 allows any public agency to institute a proceeding for the purpose of obtaining a declaratory judgment concerning the validity of its securities. The statute is intended to provide an efficient method of adjudicating the validity of public securities. Article 717m–1 is of sufficient public interest to justify consideration of its constitutionality even though the issue was not raised in the trial court.

■ Appellants contend that because section 2 of article 717m–1 allows a determination of the validity of tax assessments and rates, and because section 5 of the statute allows consolidation with the declaratory judgment action of any pending suit challenging the authority of the taxing unit to assess or collect taxes, some taxpayers may be deprived of an opportunity to raise issues they wish to litigate. This deprivation, appellants assert, may result because, under the notice provisions of article 717m–1, some taxpayers may not receive notice of

the action, and therefore may not participate and raise issues they wish to raise, and thereafter will be bound by the court's determination of the issues in the declaratory judgment action. Section 6 of article 717m–1 provides for notice by publication to any person affected by the proceeding. The notice must give a general description of the proceedings and must be published in Travis County, in the county of the public agency's office, and in any county where the public agency has territory once in each of two consecutive weeks with the date of the first publication being at least 14 days before the trial of the action.

Though this court may consider appellants' argument, appellants cannot complain that they did not receive notice under the statute because they entered an appearance. Tex.R.Civ.P. 120. An appellant "may not complain of errors which do not injuriously affect him or which merely affect the rights of others." *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex. 1973). The remainder of appellants' argument, concerning the trial procedures of article 717m–1, is so vague and general that we do not address it because we are unable to determine what their complaint is. *De Busk v. Cadenhead*, 346 S.W.2d 145 (Tex. Civ.App.–Amarillo 1961, writ ref'd n. r. e.); Tex.R.Civ.P. 418.

### STATUTORY NOTICE

■ Appellants next complain that the trial court erred in overruling their plea in abatement that alleged improper notice was issued under sections 4 and 6 of article 717m–1. Due to the failure of the trial court, after the City filed its amendment petition, to abate the cause until notice could be re–issued, appellants assert that some interested parties may not have received proper notice and thus, failed to answer. Appellants do not allege any injury to themselves resulting from the trial court's action on the plea. Appellants do not have standing to complain of the action of the trial court in overruling their plea in abatement. *Jackson v. Fontaine's Clinics, Inc., supra* at 92.

### MOTION FOR CONTINUANCE

■ Appellants argue that the trial court erred in overruling their motion for continuance, thereby allowing them insufficient time for discovery. The granting or denial of a continuance rests within the discretion of the trial judge and his decision in that respect will only be reviewed for an abuse of discretion. *Hernandez v. Heldenfels*, 374 S.W.2d 196, 202 (Tex.1963). Absent a "strong and specific showing of what preparations for trial might otherwise have been made," no abuse of discretion is shown. *McAx Sign Company, Inc. v. Royal Coach, Inc.*, 547 S.W.2d 368 (Tex.Civ.App.–Dallas 1977, no writ). Appellants did not make a strong and specific showing of what preparations for trial might have been made if the continuance had been granted and thus, their point of error complaining of the trial court's failure to grant it is overruled.

### SCOPE OF STATUTE

■ Appellants argue that their plea in bar should have been sustained because the City's first amended original petition requested rulings and judgments which were beyond the scope of article 717m–1. We do not agree. The rulings requested by the City's petition, that appellants assert are beyond the scope of the statute, involve the meaning of, and application of, the amendment to the City charter. The language of article 717m–1, § 2 is broad. It reads in part:

Any public agency may, prior to or after the issuance and delivery of any securities, institute a proceeding in rem in district court by filing a petition as provided by this Act, for the purpose of obtaining a declaratory judgment *as to the authority of the public agency to issue and deliver the securities* .... [Emphasis added.]

A determination of the meaning of, and application of, the charter amendment was necessarily involved in determining what authority the City of Irving has to issue and deliver its bonds because, according to the allegations of its petition, the amendment affects the City's authority to provide se-

curity for its bonds. Therefore, we hold that the validity of the amendment was a proper question for the court to determine under article 717m–1.

## RIGHT TO JURY TRIAL

■ Appellants contend that the trial court erred in denying them a jury trial. Article 717m–1, § 7 provides in part:

Any party to the proceedings shall be entitled to a jury trial on any issue of fact where required by the Texas Constitution.

Prior to trial, counsel for appellants suggested several issues to the court as fact issues for the jury. The trial judge ruled that each of the issues was a question of law for the court. We agree that the issues suggested to the court as fact questions were questions of law. On appeal, appellants argue that whether the amendment failed to preserve the rights of the owners of the outstanding bonds was a fact issue. The trial court found that the testimony of Mr. James Kerley, Jr., concerning the amendment's impairment of the City's bond obligations, was uncontroverted. The court did not err in failing to submit an uncontroverted issue to the jury. *Federal Surety Co. v. Smith*, 41 S.W.2d 210, 212 (Tex. Comm'n App.1931, holding approved).

## IMPAIRMENT OF OBLIGATION OF CONTRACT

Article 1, § 10, clause 1 of the federal constitution provides:

No State shall … pass any … Law impairing the Obligation of Contracts …

Article 1, § 16 of the Texas constitution contains a similar provision. The trial court held that the charter amendment was void because it violated the contract clauses of the federal constitution and the Texas constitution. One sentence of the charter amendment states:

The total sum of all ad valorem tax increases on property shall not exceed six percent (6%) of the previous year's total taxes.

Appellants argue that the trial court erred in holding this sentence of the amendment void as an impairment of the obligation of contract because under this sentence the City is capable of raising sufficient funds to pay its bonded indebtedness. We do not agree.

■ "A municipal by–law or ordinance, enacted by virtue of power for that purpose delegated by the legislature of the state, is a state law within the meaning of the Federal Constitution." *Atlantic Coast Line Railroad Co. v. City of Goldsboro*, 232 U.S. 548, 555, 34 S.Ct. 364, 366, 58 L.Ed. 721 (1914). The contract clause of the federal constitution applies to the contracts entered into by states and municipalities and thus acts as a restriction on the ability of those governmental units to impair their own contracts. *Von Hoffman v. City of Quincy*, 71 U.S. 535, 18 L.Ed.2d 403 (4 Wall. 1867). Referring to the contract clause of the federal constitution and article 1, § 14 of the state constitution of 1869, now article 1, § 16 of the state constitution, the Texas Supreme Court stated:

The same obligation to perform its contracts rests upon a corporation as upon a natural person. Whilst the legislature may deprive the corporation of its chartered rights and forbid its exercising any of the governmental powers, it must not be presumed that it intended also to absolve it from its liabilities to creditors, or contractors whose rights to compensation have become vested. A contrary rule would place contractors with municipal corporations so perfectly at the mercy of the legislature that few persons, if any, would accept employment under such corporations or make contracts with them.

*Morris & Cummings et al. v. State of Texas ex rel. Gussett et al.*, 62 Tex. 728, 743, 744 (1884). There is thus no question that the obligation of the City owed to the holders of outstanding bonds comes within the purview of the contract clauses of the federal and state constitutions. Appellants argue, however, that the sentence of the charter amendment quoted above does not impair the obligation of contract. In their brief they state, "If taxes increase every year

and bond payments are reduced every year the City has levied a sufficient amount to pay the bonds." The argument urged by appellants is that since there has been no default on the bonds, there has been no impairment of the obligation of the City to pay. This argument is not viable.

■ The supreme court, in *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), recognized that the protection of the contract clause was activated by unquantified financial loss or the potential for financial loss resulting from a legislative act. In holding that the law involved in that case impaired the obligation of contract, the court stated:

> The fact is that no one can be sure precisely how much financial loss the bondholders suffered. Factors unrelated to repeal may have influenced price. In addition, the market may not have reacted fully, even as yet, to the covenant's repeal, because of the pending litigation and the possibility that the repeal would be nullified by the courts. *Id.* at 19, 97 S.Ct. at 1516.

Under this standard, a default is not required before the obligation of contract has been impaired. Likewise, the Texas Supreme Court has stated that a default is not required before there has been an impairment of the obligation of contract:

> State and federal authorities are uniform that, when an act of a state legislature, authorizing a bond issue, creates, or authorizes the creation of, a certain fund for the bond's payment, such provision of the act enters into the contract between the debtor and the holders of the bonds, so that it cannot be repealed by subsequent legislation without the substitution of something of equal efficacy. The subsequent legislation would impair the obligation of the contract, and therefore come under constitutional condemnation.

*City of Aransas Pass v. Keeling*, 112 Tex. 339, 349, 247 S.W. 818, 821 (1923).

■ Though there has been no default, and may not be any, the sentence of the charter amendment here in question impairs the obligation of the City's contract to pay merely by limiting the ability of the City to tax. The City of Irving made the following covenants as to each of the series of its outstanding bonds:

> That to provide for the payment of the debt service requirements on the said bonds ... there shall be and there is hereby levied for the current year and each succeeding year thereafter while said bonds or interest thereon shall remain outstanding and unpaid, a sufficient tax on each one hundred dollars' valuation of taxable property in said City, adequate to pay such debt service requirements .... The City Council hereby declares and covenants that it will provide and levy a tax legally and fully sufficient for such bonds, it having been determined that the existing and available taxing authority of the City for such purpose is adequate to permit a legally sufficient tax in consideration of all other outstanding obligations.

This covenant was an important security provision of the City's contract with its bondholders. The amendment operates directly upon this covenant and lessens the security it provides by limiting the available taxing authority of the City. If the City taxes are less than they might otherwise be because, for example, federal revenue sharing funds or other sources of revenue are available to lessen the local tax burden, then the amendment prohibits increasing the City's tax revenues by more than 6% when the federal revenue sharing funds or other revenues are curtailed. Under this hypothetical fact situation, the possibility exists that the tax rate would be insufficient to meet the City's debt service requirements. In the case before us, it is not an actual insufficiency of funds that constitutes the impairment of the obligation of the City's contract, it is the potential for such insufficiency. Before the amendment was passed, this potential was extremely unlikely. The bondholders were secure and that security was part of the consideration they received for loaning the City money. After the amendment, the potential for in-

sufficiency of funds, if not likely, is more likely and the security of the bondholders has been lessened. Having contracted to levy a tax sufficient to provide for the payment of the debt service requirements of its bonds, the City cannot subsequently provide that it will levy such tax only to the extent that any necessary tax increases do not exceed six percent of the previous year's total taxes. Such a legislative impairment of the obligation of municipal contracts is contrary to the contract clause as interpreted by the Supreme Court of the United States. Legislation impairing the obligation of contract, "not indirectly as a consequence of legitimate measures taken, as will sometimes happen, but directly by operating upon those means, is prohibited by the Constitution and must be disregarded, treated as if never enacted, by all courts recognizing the Constitution as the paramount law of the land." *Wolff v. Mayor & Administrators of the City of New Orleans*, 103 U.S. 358, 26 L.Ed. 395 (1881). Since the charter amendment, including the sentence here in question, directly lessens the means of enforcing the bond obligation by limiting the ability of the City to tax without regard to existing obligations, it is void.

Affirmed.