

# The Attorney General of Texas

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

March 19, 1986

Honorable Guy James Gray
Criminal District Attorney
P. O. Box 1329
Jasper, Texas    75951

Opinion No. JM-453

Re: Applicability of article 2351a-6, V.T.C.S., to the withdrawal of a city from a rural fire prevention district

Dear Mr. Gray:

You ask for the opinion of this office concerning the right of a city within a rural fire prevention district to withdraw from the district. You advise us that the Jasper County Rural Fire Prevention District No. 4, composed of a portion of Jasper County, was created under the provisions of article III, section 48-d, of the Texas Constitution and article 2351a-6, V.T.C.S. The city of Jasper was included in the original boundaries of the district. In 1983, the voters of the proposed district, including the voters of the city of Jasper, voted in accordance with the provisions of article 2351a-6 to confirm the organization of the district and to authorize the levy of a tax not to exceed three cents on the $100 valuation of property. V.T.C.S. art. 2351a-6, §12.

Except for the issuance of bonds or notes which are authorized by sections 12A-12G of article 2351a-6, a rural fire prevention district may not contract for an indebtedness in any one year in excess of funds then on hand or in excess of an amount which may be satisfied out of current revenues for the year. V.T.C.S. art. 2351a-6, §12. A fire prevention district is authorized to issue bonds and notes that are payable from and secured by liens on and pledges of ad valorem taxes, or revenues, income, or receipts of the district, or a combination of taxes, revenues, income, and receipts. V.T.C.S. art. 2351a-6, §12A(a). The statute provides that if bonds or notes are payable from ad valorem taxes, the Board of Fire Commissioners, at the time of the authorization of the bonds or notes, shall levy a tax sufficient to pay the principal of and interest on the bonds or notes and to provide reserve funds. Secs. 12A(j), (k). Bonds or notes secured by taxes may not be authorized until approved by the voters of the district at an election for that purpose. Sec. 12B. Section 14a of the act provides for expansion of the area of a district. Effective September 1, 1985, section 14b was added to the act to authorize the exclusion of a city from a fire prevention district's territory. Section 14b provides that

(a) The governing body of a city that has an area within its corporate or extraterritorial jurisdiction included within a rural fire prevention district may, on agreeing to provide fire protection to the area as provided by Section 8B of this Act, or if the area is designated an industrial district under Section 5, Municipal Annexation Act (Article 970a, Vernon's Texas Civil Statutes), notify the secretary of the board of fire commissioners in writing that the area is excluded from the district's territory.

(b) On receipt of the notice under Subsection (a) of this section, the board shall cease to provide further service to the area, exclude the area by order from the district, and redefine the district's boundaries.

Subsequently, on October 28, 1985, the city of Jasper notified the Jasper County Rural Fire District No. 4 that the city had adopted a resolution to exclude the area within its corporate and extraterritorial jurisdiction from the fire prevention district's territory.

You first inquire whether section 14b of article 2351a-6 applies only to rural fire prevention districts created after September 1, 1985. We believe that when section 14b became law on September 1, 1985, it became applicable on that date to all rural fire prevention districts created and then existing under article 2351a-6.

Where the legislature makes no exceptions to the provisions of a statute, it is presumed that the legislature intends no exceptions. It is well settled that exceptions in statutes are not ordinarily implied. See Spears v. City of San Antonio, 223 S.W. 166, 169 (Tex. 1920); Stubbs v. Lowrey's Heirs, 253 S.W.2d 312, 313 (Tex. Civ. App. - Eastland 1952, writ ref'd n.r.e.). We find nothing in the act to indicate that the legislature intended section 14b to apply only in the case of rural fire prevention districts created after September 1, 1985.

Your second question asks for which year a withdrawal notice under article 2351a-6, section 14b, becomes effective for tax purposes. It is our opinion that a city's withdrawal from a district subsequent to January 1 has no effect on the assessment or collection of taxes by the district for the year in which the withdrawal occurs and would be effective on January 1 of the year following withdrawal. The status of property for taxation is fixed on January 1 of each year. See Hedgecroft v. City of Houston, 239 S.W.2d 828, 830 (Tex.

Civ. App. - Galveston 1951), rev'd on other grounds, 244 S.W.2d 632 (Tex. 1951); Attorney General Opinion O-4589 (1942).

The board of a rural fire prevention district shall annually levy and cause to be assessed and collected a tax on all properties, real and personal, situated within the district and subject to district taxation in an amount not to exceed three cents on the $100 valuation for the support of the district and for the purposes authorized by article 2351a-6. Sec. 12. Real property is taxable by a taxing unit if located in the unit on January 1. Tax Code §21.01. Except for railroad rolling stock, tangible personal property is taxable by a taxing unit on January 1, if it is located in the unit on January 1 for more than a temporary period or it normally is located in the unit, even though it is outside the unit on January 1, if it is outside the unit only temporarily. Tax Code §21.02.

Your third question asks, if article 2351a-6, section 14b, is not applicable, must the withdrawal be by a majority vote in an election of those living within the corporate limits and extraterritorial jurisdiction of the city. Article 2351a-6 provides both for expansion of an existing rural fire prevention district and for dissolution of such a district. Secs. 14a, 19-22. Except for section 14b, which became effective on September 1, 1985, the act contains no provisions which authorize the withdrawal of any territory from an existing rural fire prevention district. The act requires ratification of the annexation of territory to a district by a majority vote of the electors at a separate election held in the existing district and by a majority vote of the electors at a separate election held in the territory proposed to be added. Sec. 14a(5)(a). The act also requires an election to confirm the dissolution of a rural fire prevention district. Sec. 21. But neither section 14b, which provides for the exclusion of corporate limits and extraterritorial jurisdiction from the boundaries of an existing fire prevention district, nor any other provision of article 2351a-6 contains either a requirement or authority for an election by the voters residing in a territory that will be withdrawn from an existing district. We conclude that the act does not authorize an election to confirm or accomplish the withdrawal of any territory from the boundaries of an existing rural fire prevention district.

You advise us that the fire prevention district made purchases of equipment and incurred indebtedness based on its ability to pay with its existing tax base, and that the withdrawal of city property values from the tax base jeopardizes the district's ability to repay its previously incurred indebtedness. Your last question is:

> What protection does the district have in this situation?

Since the legislature expressly provided that, except for the issuance of authorized bonds or notes, no indebtedness may be contracted in any one year in excess of funds then on hand or which may be satisfied out of current revenues for the year, we assume that the district's concern involves its ability to repay indebtedness incurred by the issuance of bonds or notes. Hence, the issue includes the protection of bondholders of the district.

A statute authorizing a bond issue and providing the means for its repayment constitutes part of a contract with bondholders that may be enforced by bondholders. See Cochran County v. Mann, 172 S.W.2d 689, 690 (Tex. 1943). Subsequent legislation that removes the source of repayment to bondholders without substitution of something of equal efficacy may impair the obligation of contract and, therefore, come under constitutional condemnation. See U.S. Const. art. I, §10, cl. 1; Tex. Const. art. I, §16; City of Aransas Pass v. Keeling, 247 S.W. 818, 821 (Tex. 1923); Burns v. Dilley County Line Independent School District, 295 S.W. 1091, 1094 (Tex. Comm'n App. 1927, judgmt adopted); Attorney General Opinion O-1205 (1939). The courts have said that the most certain test of whether an impairment of a contract has occurred is whether the value of the contract has been diminished. See Dallas County Levee Improvement District No. 6 v. Rugel, 36 S.W.2d 188, 189 (Tex. Comm'n App. 1931, judgmt adopted). In Determan v. City of Irving, Texas, 609 S.W.2d 565 (Tex. Civ. App. - Dallas 1980, no writ), the court found that a charter amendment limiting the taxing authority of a city lessened the security of bondholders and constituted impairment of the obligation of contract. It is, however, the bondholders who have standing to raise the question of impairment of the obligation of contract. See U.S. Trust Co. v. New Jersey, 431 U.S. 1 (1977).

In the case of the expansion of a rural fire prevention district that has outstanding debts or taxes, article 2351a-6 requires the voters of proposed additional territory to agree to assume the additional territory's proportion of the debts or taxes. Sec. 14a(5)(b). Following voter approval to dissolve a rural fire prevention district, article 2351a-6 requires the board to continue levying and collecting a tax on the property in the district until all outstanding debts of the district are paid. Sec. 22. Article 2351a-6 contains no express provision for payment of the excluded territory's pro rata share of an existing district indebtedness. Cf. Water Code §§53.268, 54.731 (on payment of pro rata share of existing district indebtedness, excluded territory and its taxpayers are released from liability to the district and payment of taxes). It is our opinion that article 2351a-6, as recently amended to authorize the exclusion of a city from a district, is not facially unconstitutional. In particular situations where the obligation of contract to bondholders would be impaired, the statute may be unconstitutional as applied without the collection of taxes from the excluded area to pay its pro rata share of obligations

Honorable Guy James Gray - Page 5   (JM-453)

to bondholders that are in existence at the time the city is withdrawn from the district.  See Attorney General Opinion MW-337 (1981).

S U M M A R Y

Section 14b of article 2351a-6, V.T.C.S., applies to all rural fire prevention districts.  A city's withdrawal from a rural fire prevention district is effective for tax purposes on January 1 of the year following withdrawal.  Article 2351a-6 does not require or authorize an election by voters of a city to confirm or accomplish withdrawal of the city from a district.  A statute authorizing a bond issue and providing the means for its repayment constitutes part of a contract with bondholders that may be enforced by bondholders.

Very truly yours,

JIM   MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General