

# THE ATTORNEY GENERAL
## OF TEXAS

August 25, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Garry Mauro
Commissioner
General Land Office
Stephen F. Austin Building
1700 North Congress Avenue
Austin, Texas    78701

Opinion No. JM-774

Re:  Whether the Veterans Land Board may impose a fee for delivery of a paid-in-full deed to a purchaser under the Veterans Land Program

Dear Mr. Mauro:

As chairman of the Veterans Land Board and Commissioner of the General Land Office, you request advice on the authority of the Veterans Land Board to collect the fees authorized by section 161.070 of the Natural Resources Code from veterans who have purchased land through the board.  The Veterans Land Board was created by constitutional provision.  See Tex. Const. art. III, §49-b.  Article III, section 49-b of the constitution provides for the creation and funding of the Veterans Land Fund, to be used to purchase land for resale to veterans on terms, prices, and interest rates provided by law.  Id. The legislature passed an enabling act in 1949.  Acts 1949, 51st Leg., ch. 318, at 592.

Statutes governing the Veterans Land Board are now codified in chapter 161 of the Natural Resources Code.  Section 161.070 of the Code, the provision about which you inquire, provides in part:

> (a)  The board shall set and collect, for the use of the state, reasonable fees in amounts determined by the board for services it may provide in connection with processing and servicing of purchase applications and contracts of sale and purchase and matters incidental to these purchases.  These fees may include but are not limited to the following:
>
> . . . .
>
> (2)  contract of sale and purchase transfer fee for each transfer;
>
> (3)  mineral lease service fee for each lease executed by purchasers;

. . . .

(6) fee for servicing and filing each easement;

(7) service fee for each contract of sale and purchase;

(8) fee for homesite, severance, or paid-in-full deed;

(9) title examination fee;

(10) recording fees;

. . . .

(13) fee for preparation of legal instruments, including but not limited to deeds, contracts, affidavits, and curative instruments;

. . . .

(16) fees for any other services which may be requested of the board.

(b) These fees may be added to the price of any land sold or resold by the board.

(c) Fees or portions of fees that are in the opinion of the board unused shall be refunded. (Emphasis added).

Nat. Res. Code §161.070.

You particularly inquire about the fee for issuing a paid-in-full deed pursuant to subsection (a)(8) of section 161.070. The factual information and the briefing you have provided focus on the collection of a fee for that service. We will restrict our answer to this fee and will not consider other fees authorized by section 161.070, since different legal and factual considerations may apply to each fee.

Your three questions are directed at determining whether the board has authority to collect the fee for issuing a deed upon full payment of the loan if the land purchase contract predates subsection 161.070(a)(8) of the Natural Resources Code.

The 1949 legislation for the Veterans Land Program did not specifically provide for fees. In 1961, a deed fee of $10 was authorized, and a later amendment increased it to $20. Acts 1961, 57th Leg., ch. 269, §3, at 572; Acts 1973, 63d Leg., ch. 615, §6 at 1690 (codified as former V.T.C.S. art. 5421m, §21 (repealed in 1977)). In 1983, the specific amount of the deed fee was deleted from section 161.070 of the Natural Resources Code, and the board was authorized to set the amount of the fee. Acts 1983, 68th Leg., ch. 81, §21(o), at 355, 406. The board promulgated a rule setting the deed fee at $80 in September 1983. 40 T.A.C. §175.17(8) (1983).

You state that the longstanding practice of the board has been to collect from a veteran the amount authorized at the time the deed is issued, regardless of the date the contract between the board and the veteran was executed. In the board's opinion, the fee is directly related to services provided by the agency and the amount to be collected is determined by the date the service is provided.

You have attached a sample contract executed in September 1954. We will address your question in the context of its provisions.

When the state enters into a valid contract, it is as much bound thereby as a private citizen would be by a similar contract. Board of Regents of the University of Texas v. S & G Construction Co., 529 S.W.2d 90 (Tex. Civ. App. - Austin 1975, writ ref'd n.r.e.); Seaway Company v. Attorney General, 375 S.W.2d 923 (Tex. Civ. App. - Houston 1964, writ ref'd n.r.e.). The authority of state officers and agents to contract is controlled by the law in effect when the contract was entered into. Fazekas v. University of Houston, 565 S.W.2d 299 (Tex. Civ. App. - Houston [1st Dist.] 1978, writ ref'd n.r.e.), appeal dismissed, 440 U.S. 952 (1979); see State v. Ragland Clinic-Hospital, 159 S.W.2d 105 (Tex. 1942); State v. Steck Co., 236 S.W.2d 866 (Tex. Civ. App. - Austin 1951, writ ref'd). The laws existing when a contract is made constitute part of the contract. United States Trust Co. v. New Jersey, 431 U.S. 1, 19 at n. 17 (1977); Langever v. Miller, 76 S.W.2d 1025 (Tex. 1934); Housing Authority of El Paso v. Lira, 282 S.W.2d 746 (Tex. Civ. App. - El Paso 1955, writ ref'd n.r.e.).

The 1954 contract which you have attached to your request letter was entered into at a time when the Veterans Land Board had no statutory authority to charge fees for issuance of a deed when the loan was fully paid. Fee statutes are strictly construed, and fees are not permitted by implication. Moore v. Sheppard, 192 S.W.2d 559, 561 (Tex. 1946); Nueces County v. Currington, 162 S.W.2d 687, 688 (Tex. 1942); State v. Moore, 57 Tex. 307, 321 (1882); Attorney General Opinion Nos. JM-346 (1985); H-796 (1976); V-957 (1949). Thus, when the 1954 contract was entered into, the board had no express or implied authority to charge a fee for providing a paid-in-full deed.

The contract, moreover, expressly incorporates the provisions of the veterans land law as they existed when it was executed. The contract states in part:

> Whereas, the Veterans' Land Board of Texas has, in accordance with the provisions of Acts 51st Leg., R.S., 1949, ch. 318, as amended by Acts 52nd Leg., R.S., 1951, ch. 324, purchased a certain tract of land hereinafter described in this instrument. . . .

> Whereas . . . a duly qualified Texas Veteran as described in said Act, as amended, has complied with the requirements of said Board to purchase said Land in accordance with the provisions of said Act which is made a part of this contract for all purposes;

> Now Therefore, the following named parties do make this Agreement:

> . . . .

> 9. Seller agrees to execute a deed under its seal to the original purchaser of the land when the entire indebtedness due the state under this contract of sale is paid.

> 10. It is agreed between buyer and seller that all of the conditions, limitations and requirements as well as all benefits and penalties contained in the provisions of Acts 51st Leg., R.S., 1949, ch. 318, as amended by Acts 52nd Leg., R.S., 1951, ch. 324, together with all rules and regulations promulgated by the Veterans' Land Board, shall be binding upon the parties hereto in the same manner as if they were fully recited herein.

In this contract, the parties agree to exchange land for a purchase price and interest payable over a period not to exceed 40 years. They also exchange other promises, including the board's agreement to execute a deed when the debt is fully paid off. The veteran contracted for delivery of a deed as one aspect of the total consideration he received for his promise to pay the debt and to comply with other conditions required in the contract. When he complies with those conditions, the contract gives him a right to receive a deed without paying additional consideration.

Imposition of the $80 fee for the deed would therefore change the terms of the contract. We will consider whether the legislature may constitutionally authorize the board to collect the fee from purchasers whose contracts entitled them to delivery of the deed without any additional payment for that purpose.

Article I, section 10, clause 1, of the federal Constitution provides:

> No State shall . . . pass any . . . Law impairing the Obligation of Contracts. . . .

Article I, section 16, of the Texas Constitution similarly prohibits the enactment of "any law impairing the obligation of contracts. . . ." The contract clauses of the federal and state constitutions apply to contracts entered into by states. Von Hoffman v. City of Quincy, 71 U.S. 535 (1866); Fazekas v. University of Houston, 565 S.W.2d 299 (Tex. Civ. App. - Houston [1st Dist.] 1978, writ ref'd n.r.e.), appeal dismissed, 440 U.S. 952 (1979); Determan v. City of Irving, Texas, 609 S.W.2d 565 (Tex. Civ. App. - Dallas 1980, no writ); see Johnson v. Smith, 246 S.W. 1013 (Tex. 1922).

The contract clause appears to proscribe "any" impairment, but its prohibition is not absolute. United States Trust Co. v. New Jersey, 431 U.S. at 21; Home Building and Loan Assn. v. Blaisdale, 290 U.S. 398, 428 (1934). In Home Building and Loan Assn. v. Blaisdale, supra, the Supreme Court upheld the Minnesota Mortgage Moratorium Law, which allowed judicial extension of the time for redeeming a foreclosed mortgage. The act was a temporary provision, adopted in response to mortgagors' hardships during the Depression. The Supreme Court found that a reservation of state power necessary to protect the public interest was deemed to be part of all contracts. Home Building and Loan Assn. v. Blaisdale, 290 U.S. at 439. But see Travelers' Insurance Co. v. Marshall, 76 S.W.2d 1007 (Tex. 1934) (Texas mortgage moratorium act held to violate article I, section 16, of the Texas Constitution).

In City of El Paso v. Simmons, 379 U.S. 497 (1965), the Supreme Court dealt with a 1941 statute limiting the time in which purchasers of school lands could redeem land forfeited for failure to pay interest. Under a 1910 statute, the purchaser could redeem the property for an indefinite period by paying delinquent interest. The 1941 statute limited to five years the time in which forfeited land could be redeemed, applying this provision to existing contracts.

The purpose of the statute was to restore confidence in the stability and integrity of land titles. City of El Paso v. Simmons, 379 U.S. at 511. The indefinite period for redemption had encouraged land speculation, in that purchasers would make the small down

payment, fail to make interest payments, and then redeem the land if it appeared likely to produce oil or gas. The Supreme Court held that in view of the state's interest in restoring the stability and integrity of land titles and enabling the state to administer its property in a businesslike manner to maximize revenues for the public schools, the 1941 statute did not impair the obligation of contracts. It moreover pointed out that the five year statute of limitations would protect anyone with a bona fida interest in his land.

United States Trust Co. v. New Jersey, 431 U.S. 1 (1977) arose out of an agreement between New York and New Jersey on the financing of their jointly owned Port Authority. In 1962 the two states agreed with each other and with holders of Port Authority bonds not to divert to other uses any revenues or reserves pledged as security for those bonds. In 1974, both states enacted legislation repealing this covenant in order to devote revenues to mass transit. The Supreme Court determined that the 1962 covenant had been properly characterized as a contractual obligation of the two states, and that its repeal impaired the states' contract with the bondholders. 431 U.S. at 21.

In determining whether that impairment violated the Contract Clause the Supreme Court discussed the states' reserved power to adopt general regulatory measures even though private contracts might be impaired. The court then stated:

> When a state impairs the obligation of its own contract, the reserved-powers doctrine has a different basis. The initial inquiry concerns the ability of the State to enter into an agreement that limits its power to act in the future.

United States Trust Co. v. New Jersey, 431 U.S. at 23.

Reviewing prior decisions, the Supreme Court pointed out that a state could not contract away the police power or the power of eminent domain, but that a state could bind itself in the future exercise of the taxing and spending power. Id. at 24. However, an impairment of a state's own financial obligations might be constitutional if it is reasonable and necessary to serve an important public purpose. Complete deference to the legislature's assessment of reasonableness and necessity is not appropriate because the state's self-interest is at stake. The court further stated that

> a State cannot refuse to meet its legitimate financial obligations simply because it would prefer to spend the money to promote the public good. . . .

431 U.S. at 29. The repeal of the 1962 covenant could be sustained only if it was "both reasonable and necessary to serve the admittedly important purpose claimed by the State." 431 U.S. at 29. The court determined that total repeal of the covenant was not essential. In addition, the two states could have discouraged automobile use and improved mass transit without modifying the contract at all. City of El Paso v. Simmons, was distinguished in that the imposition of a five-year statute of limitations on what was previously regarded as a perpetual right of redemption was "quite clearly necessary" to achieve the state's "vital interest in the orderly administration of the school lands program." 431 U.S. at 31. Finally, the 1962 covenant was adopted with full knowledge of the need for mass transportation in the area; the repeal cannot be said to be reasonable in light of changed circumstances.

We turn to a consideration of the $80 fee imposed for issuance of a paid-in-full deed under subsection 161.070(a)(8) of the Natural Resources Code. This provision was included in Senate Bill No. 288 of the Sixty-eighth Legislature, which was enacted in 1983 to increase fees for services performed by state agencies to more nearly cover the administrative costs of delivering the service. Bill Analysis to C.S.S.B. 288, 68th Leg., filed in Bill file to S.B. No. 288, Legislative Reference Library.

An interim committee was appointed by the Sixty-seventh Legislature to study fees collected by state agencies and to recommend changes. The report of the interim committee noted that reliance on fees has been necessitated by several factors, including a decreasing dependence on the ability of the property tax to support services. Senate Committee on Fees and Grants, Interim Report to the 68th Texas Legislature at ii (Nov. 10, 1982). The report also stated that factors such as cost recovery and inflation contributed to its recommendations for fee increases. Id. at iii. It noted that rises in the consumer price index since fees were set accounted for recommended increases in fees collected by the General Land Office. The proposed increases in Veterans Land Program fees set in 1949 would account for a $600,000 net gain. Id. at 14.

Thus, section 161.070(a)(8) of the Natural Resources Code was part of a legislative program to increase revenues by bringing fees up to date. Neither the report nor the bill analysis mention the existence of contract provisions relevant to payment for services subject to fee increases.

We first consider whether the imposition of an $80 fee on the land purchase contract is a significant enough change in contract terms to raise the issue of impairment. In United States Trust Co. v. New Jersey, the Supreme Court wrote that

> a finding that there has been a technical impair-
> ment is merely a preliminary step in resolving the
> more difficult question whether that impairment is
> permitted under the Constitution.

431 U.S. at 21.  Discussing United States Trust Co. v. New Jersey in a later case, the Supreme Court characterized it as recognizing that the state's sovereign power has limits "when its exercise effects sub-stantial modifications of private contracts."  Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244 (1978).  The Supreme Court stated that the first inquiry must be whether the state law has operated as a substantial impairment of a contractual relationship:

> Minimal alteration of contractual obligations may
> end the inquiry at its first stage.  Severe
> impairment, on the other hand, will push the
> inquiry to a careful examination of the nature and
> purpose of the state legislation.  (Footnote
> omitted).

Allied Structural Steel Co. v. Spannaus, 438 U.S. at 245.  See also Energy Reserves Group, Inc. v. Kansas Power & Light, 459 U.S. 400, 411 (1983).

In our opinion, the assessment of the additional $80 fee for issuance of a deed constitutes an impairment that is more than a minimal or technical impairment.  The individual veteran who contracted before 1962 to purchase land from the state expected to receive a deed upon full payment of the price stated in the contract.  In effect, the state hopes to charge the veteran $80 for a service which it contracted to provide free of charge.  Viewed from this perspective, we believe the impairment of the contract is significant enough to require some examination of the nature and purpose of the legislation.  Allied Structural Steel Co. v. Spannaus, 438 U.S. at 245.

The severity of the impairment increases the level of scrutiny to which the legislation will be subjected.  Energy Reserves Group, Inc. v. Kansas Power & Light, 459 U.S. at 411; Allied Structural Steel Co. v. Spannaus, supra.  Even if the impairment in this case is characterized as not very severe, the legislation would not survive the corresponding low level of scrutiny.  In this case, the state has impaired its own contract in order to increase fee revenues to support the Veterans Land Board.  The state may bind itself in the future exercise of its spending powers.  United States Trust Co. v. New Jersey, 431 U.S. at 24.  Thus, it did not contract away an essential aspect of its sovereignty in contracting to sell veterans lands for a specific consideration.  The legislature enacted Senate Bill No. 288 to increase revenues to state agencies.  In our opinion, this reason

does not justify the contract impairment at issue.    As the Supreme Court stated in United States Trust Co. v. New Jersey:

> A governmental entity can always find a use for extra money, especially when taxes do not have to be raised.  If a State could reduce its financial obligations whenever it wanted to spend the money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all.  (Footnote omitted).

431 U.S. at 26.

In our opinion, the $80 fee may not constitutionally be assessed of land purchasers whose contracts pre-date any fee provision.  We need not, therefore, address article I, section 16, of the Texas Constitution.  Based on a brief study of cases construing article I, section 16, it appears likely that imposition of the $80 fee would violate that provision as well.  See, e.g., Hutchings v. Slemons, 174 S.W.2d 487 (Tex. 1943) (statute of frauds pertaining to real estate broker's contracts violates article I, section 16, of the Texas Constitution insofar as it applies to contracts made prior to its effective date); Travelers Insurance Co. v. Marshall, 76 S.W.2d 1007 (Tex. 1934); Dallas County Levee Improvement District No. 6 v. Rugel, 36 S.W.2d 188 (Tex. Comm. App. 1931, judgmt adopted); Cape Conroe Ltd. v. Specht, 525 S.W.2d 215 (Tex. Civ. App. - Houston [14th Dist.] 1975, no writ) (substantive rights and duties of parties to contract are established by law at time of contracting; subsequent law which changes such rights and duties violates article I, section 16, of the Texas Constitution).

## S U M M A R Y

The Veterans Land Board may not impose a fee for delivery of a paid-in-full deed authorized by section 161.070 of the Natural Resources Code on purchasers of land whose contracts entitle them to delivery of the deed without payment of such a fee.  A statute authorizing imposition of the fee in such cases would impair the obligation of contract and thus violate article I, section 10, clause 1, of the United States Constitution.

Very truly yours,

JIM  MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General